ROSEMARY LEDET, Judge.
I,This is the second appeal in this expropriation case. The plaintiff — the expropriating authority — is the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the “Board”). The defendant — the property owner — is 1732 Canal Street, L.L.C. (“1732 Canal”). In the first appeal, the Board challenged the jury’s award of $9,566,640.00 to 1732 Canal as the total compensation due for the expropriated property; this court affirmed. Board of Sup’rs of Louisiana State University and Agr. and Mechanical College v. 1732 Canal Street, L.L.C, 12-1370 (La.App. 4 Cir. 6/19/13), — So.3d-, 2013 WL 3078512 (“7732 Canal I”).
In the instant appeal, the Board challenges the post-trial award to 1732 Canal of expert fees and costs; the Board does not challenge the post-trial award of attorneys’ fees in the amount of 18% of the additional just compensation plus interest. Answering the appeal, 1732 Canal seeks an increase in attorneys’ fees.[1] For the reasons that follow, we affirm the awards of expert fees and costs; and we |2remand to the trial court for a determination of the additional award of attorneys’ fees owed for post-judgment work on appeal.
I.
On October 18, 2010, the Board filed a petition for expropriation against 1732 Canal in its capacity as owner of the property located at 1732 Canal Street in New Orleans, Louisiana (the “Property”). The purpose of the expropriation was to facilitate the construction of the new University Medical Center (also known as the Academic Medical Center). According to the petition, the improvements on the Proper *113 ty included a commercial building — a 17-floor, 618,000 square feet building with an attached 250-car parking garage. When it was built in 1952, the building was one of the largest apartment buildings in the South, having 1,036 apartment units on the upper floors, and meeting rooms and retail space on the lower floors. At the time of the trial, the Board was planning to implode the building.
Contemporaneous with the filing of the expropriation petition, the Board deposited $4,500,000.00 into the registry of the court as just compensation due to 1732 Canal to compensate it to the full extent of its loss. In response, 1732 Canal filed an answer and a reconventional demand, alleging that the Board had “not deposited the just and fair compensation due defendant.”
In its petition, the Board requested a jury trial. From April 30, 2012, to May 3, 2012, a four-day jury trial was held. As a result of stipulations,[2] the sole issue |,.¡presented to the jury was the amount of just compensation due to 1732 Canal. At trial, eight witnesses testified — four on the Board’s behalf and four on 1732 Canal’s behalf. 1732 Canal’s four witnesses (all experts) were as follows: (1) Heyward M. Cantrell, of Cantrell Real Estate, Inc., who was qualified as an expert in the area of real estate appraising; (2) Jimmie Thorns, Jr., of Thorns Consulting, who was qualified as an expert real estate appraiser; (3) John C. Williams, of John C. Williams Architects, L.L.C., who was qualified as an expert in the areas of architecture, availability of tax credits, and adaptive reuse; and (4) James Blazek, Jr., of Leaaf Environmental, L.L.C., who was qualified as an expert in asbestos, mold, lead identification, abatement, and management.
The testimony of 1732 Canal’s two appraisers is summarized in this court’s opinion in 1732 Canal I as follows:
Defendant expert Heyward Cantrell testified that the highest and best use of the property was for adaptive re-use and that the building was suitable for multi-use, including apartments, senior living or assisted facilities, medical student housing, and other residential or medical related purposes. Based on a comparable sales analysis for the land, Mr. Cantrell asserted that, based on a land value of $45.00 per square foot, the land value of the property was $3,690,000.00. Mr. Cantrell valued the improvements on the property using the cost approach, beginning with the replacement costs for the shell of the building by John Williams (the defendant’s expert in the area of architecture, availability of tax credits, and adaptive re-use), applying standard indirect costs and depreciation analysis, as well as cleaning costs estimated by Mr. Williams and asbestos remediation costs [estimated by James Blazek, Jr.[3]], *114 resulting in a depreciated improvement valued of $18,060,000.00. Thus, after adding the value of the land to the improvements, Ms. Cantrell opined that the October 2010 market value of the property and improvements was $21,750,000.00.
| ¿Defendant expert Jimmie Thorns testified that the highest and best use of the property was for future development of office, condo, retail, or commercial mixed use developments but conceded that, as the building was extremely well constructed, it was of the type adaptively re-used “all the time in New Orleans.” Using comparable vacant land sales prices ranging from $46.95 to $98.83 per square foot and giving greater weight to the price per square foot of a property two blocks from the defendant property in this case, Mr. Thorns estimated that the defendant land value was (based on $58.00 per square foot) $4,737,000.00. He used a separate comparative sales analysis of similar properties acquired for adaptive re-use purposes to determine that the total improvement value was $16,703,000.00, thus resulting in a total just compensation due the landowner of $21,460,000.00. However, Mr. Thorns acknowledged that he failed to include into his calculations any value for the approximately 100,000 square feet of parking garage.
1732 Canal Street I, 12-1370 at pp. 7-8, — So.3d at-.
The jury returned a verdict of $9,566,640.00 as the total compensation due for the expropriated property. On May 10, 2012, the trial court entered judgment in accord with the jury’s verdict. Subtracting the amount deposited ($4,500,-000.00) from the jury’s verdict ($9,566,-640.00), the trial court awarded 1732 Canal an additional sum of $5,066,640.00. In its judgment, the trial court also awarded “any attorney’s fees, expert fees, and costs to be fixed upon hearing of the post-trial motion to be filed promptly by 1732 Canal Street, L.L.C.”[4]
On May 25, 2012, 1732 Canal filed a Motion for Award of Attorneys’ Fees, Expert Fees, and Costs (the “Motion”). In the Motion, 1732 Canal requested attorneys’ fees in the full amount it paid under a contingency fee contract of 33 1/3% of the additional just compensation, and costs and expert fees in the actual | r,amount it incurred. It also requested a special setting, noting the probable need to present evidence. Although the Motion was set for hearing on August 2, 2012, the parties jointly agreed, due to a scheduling conflict, to submit the Motion on the briefs. The trial court allowed the parties to submit supplemental memoranda.
In support of the Motion, 1732 Canal attached five affidavits — one from its lead counsel, Randall Smith, and one from each of its four testifying expert witnesses. In his affidavit, Mr. Smith attested that 1732 Canal incurred a total of $391,998.00 taxable expert fees and costs in prosecuting its claims to judgment by jury verdict. Mr. Smith also attested that 1732 Canal’s attorneys “anticipate incurring significant *115 additional fee hours during the post-trial process and any appellate process.”
Each of the four experts in their affidavits explained their qualifications, the work they performed in this case, and the fees they charged 1732 Canal as follows.
Heyward Cantrell
Mr. Cantrell attested that he is a Florida resident; that he is the head of Cantrell Real Estate, Inc.; and that he has been appraising property since the 1970s. He attested that in preparation for trial in this case, he prepared an 86-page expert report. He also attested that the amount of fees invoiced by him (and paid by 1732 Canal) totaled $132,647.13, broken down as follows:
Strategy/Conferences, Property Inspections 26.25 hours $ 15,851.25
Review of appraisals; Research; Report Preparation 78.95 hours $ 70,319.50
Prepare for deposition Deposition 45 hours $ 13,980.00
Prep for trial testimony 43 hours $ 12,685.00
Trial 29.5 hours $ 8,702.50
FedEx $ 410.89
Travel $ 10,697.99
TOTAL INVOICED AMOUNT $132,647.13
| ¡Jimmie Thorns
Mr. Thorns attested that he is a New Orleans domiciliary; that he is President of Thorns Consulting, Inc.; and that he has been appraising property in the New Orleans area continuously since 1978. He attested that in preparation for trial in this case, he prepared a 121-page expert report. He also attested that the amount of fees actually invoiced by him (and paid by 1732 Canal) totaled $38,200.00, broken down as follows:
Appraisal $18,000.00
Consultation 11 hours $ 2,200.00
Depo. Pre/Depo 10 hours $ 2,000.00
Trail Prep + Trial 80 hours $16,000.00
TOTAL INVOICED AMOUNT © © © © 03 OO CO 6/5-
John Williams
Mr. Williams attested that he is the head of John C. Williams Architects, L.L.C.; that he has been engaged as an architect in the New Orleans area continuously since 1983; and that he has been accepted as an expert in architecture by the Louisiana courts. Mr. Williams attested that the amount of fees actually invoiced by him (and paid by 1782 Canal) totaled $106,969.03, broken down as follows:
Property Inspections, Research, Document Review and Report Preparation 404.91 hours $ 91,179.68
Prepare for Deposition; Deposition 6.5 hours $ 1,950.00
Prepare for Trial + Trial (Williams) 41.25 hours $ 12,375.00
Document Production Costs, Postage, etc. $ 1,464.35
TOTAL INVOICED AMOUNT $106,969.03
*116 James Blazek, Jr.
Mr. Blazek attested that he has been a principal of Leaaf Environmental, L.L.C, since 2005; that he has been engaged in environmental consulting work in New Orleans since 1989; that he holds numerous LDEQ and EPA certifications; |7and that he is a Louisiana state certified Asbestos Inspector and Supervisor. Mr. Blazek attested that the amount of fees actually invoiced by him (and paid by 1732 Canal) totaled $24,974.50, broken down as follows:
$ 2,465.79 Review of Environmental Documents
$ 2,625.00 Deposition prep + Deposition
$19,062.50 Tidal prep + Trial
$ 499.00 Automobile charges + Parking
$ 150.00-Equipment + related charges
$ 172.21 Document Production Costs, Postage, etc.
TOTAL INVOICED AMOUNT $24,974.50
Two of the four experts — Mr. Cantrell and Mr. Williams — attested that their invoices included time for other eredentialed staff of their firm, who assisted them in the fact-gathering related to their expert report and trial preparation. Both Mr. Cantrell and Mr. Williams further attested that their staffs work was performed under their supervision and that it “was work necessary for trial that [they] would have been required to perform (at [their] hourly rate) if [they] had not had their [staffs] assistance.” Three of the experts (all but Mr. Thorns) attested that they considered and relied in part upon the work performed by other experts in this matter.
Finally, all four experts attested that the work that they performed in this matter consisted of the following three tasks: (1) fact-gathering and site investigation necessary for the preparation of their reports; (2) preparation of their expert reports; and (3) preparation for trial, including preparation for cross-examination questions for both deposition and trial purposes. All four experts further attested that all of the fees set forth in their invoices submitted to the trial court in connection with the Motion were actually incurred and necessary to their presentation of their testimony at trial.
|sIn addition to the total invoiced fees for the four testifying experts, 1732 Canal also requested the fees for its exhibit and demonstrative consultant, Jeffrey Hamill, in the total invoiced amount of $36,800.00, broken down as follows:
12 hours $ 3,500.00 Expert Witness Meetings + Site Visits
112 hours $16,800.00 Demonstrative Design
95 hours $ 9,500.00 Exhibit Prep/Organization (trial prep)
4 days $ 7,000.00 War Room Services (trial prep) + Trial
TOTAL INVOICED AMOUNT $36,800.00
1732 Canal further requested the fees for the following three non-testifying experts: Morphy Makofsky, Inc. — $1,690.00; Moses Consulting Engineer — $7,027.50; and Reed Estimating Services Co.— $3,150.00. 1732 Canal still further requested other miscellaneous costs, including filing fees and equipment rental.
On November 28, 2012, the trial court rendered judgment in favor of 1732 Canal and against the Board on the Motion, awarding the following: $750,000.00 in attorneys’ fees; $10,472.50 for Mr. Cantrell’s *117 expert witness fee; $21,000.00 for Mr. Thorns’ expert witness fee; $8,031.25 for Mr. Williams’ expert witness fee; $8,719.00 for Mr. Blazek’s expert witness fee; $784.50 for filing fees; $607.82 for sheriffs costs; $150.00 for jurors’ meals; $2,524.44 for the rental of equipment used at trial; $9,500.00 for Mr. Hamill’s exhibit preparation; and $4,000.00 for Mr. Hamill’s court room services.
In response, 1732 Canal filed a motion for new trial. Following two hearings, the trial court granted the motion for new trial. In its judgment dated April 29, 2013, the trial court awarded 1732 Canal attorneys’ fees in the amount of 18% of the additional just compensation plus interest. The trial court further awarded the same amounts as in its earlier judgment for the following miscellaneous costs: filing fees ($784.50), sheriffs costs ($607.82), jurors’ meals |9($150.00), and rental equipment used at trial ($2,524.44). The trial court still further awarded the following expert fees and costs:
1.Heyward Cantrell/Cantrell Real Estate, Inc.:
78.95 hours $70,319.50 Review of appraisals; Research; Report Preparation
43 hours $12,685.00 Prep for trial testimony
29.5 hours $ 8,702.50 Trial
$91,707.00 TOTAL AWARD
2.Jimmie Thorns/Thorns Consulting, Inc.:
Appraisal $18,000.00
Trail Prep + Trial 80 hours $16,000.00
TOTAL AWARD $34,000.00
3.John Williams/John C. Williams Architects, L.L.C:
Property Inspections, Research, Document Review and Report Preparation 404.91 hours $ 91,179.68
Prepare for Trial + Trial (Williams) 41.25 hours $ 12,375.00
TOTAL AWARD $103,554.68
4.James Blazek, Jr./Leaaf Environmental, L.L.C:
Review of Environmental Documents $ 2,465.79 Trial prep + Trial $19,062.50
TOTAL AWARD $21,528.29
5.Jeffrey Hamill:
*118 Demonstrative Design 112 hours $16,800.00
Exhibit Prep/Organization (trial prep) 95 hours $ 9,500.00
War Room Services (trial prep) + Trial 4 days $ 7,000.00
TOTAL AWARD $33,300.00
6.Morphy Makofsky, Inc. $1,690.00
7. Moses Consulting Engineer $7,027.50
8. Reed Estimating Services Co. $3,150.00
This appeal by the Board followed. Answering the appeal, 1732 seeks an increase in attorneys’ fees.
II.
|10On appeal, the Board does not challenge 1732 Canal’s right to recover reasonable expert fees and costs; rather, it challenges the excessiveness and unreasonableness of certain of the expert fees and costs awarded. Before addressing the Board’s arguments, we outline the general principles governing the award of expert fees and costs.
The award of costs — which encompasses the award of expert fees — is authorized by overlapping statutory and co-dal provisions: La. R.S. 13:5112, which provides for the discretionary award of costs in favor of the successful party in a suit against the state or a political subdivision; [5] and La. C.C.P. art.1920, which provides that costs are paid by the party cast in judgment unless the court, in equity, rules otherwise.[6] Vela v. Plaquemines Parish Government, 00-2221 to 00-2224, p. 29 (La.App. 4 Cir. 3/13/02), 811 So.2d 1263, 1282. Items that may be taxed as costs are governed by La. R.S. 13:4533, which covers general costs,[7] and La. R.S. 13:3666, which covers expert witness fees.[8] Id.
[nThis court recently outlined the governing principles for reviewing awards of *119 costs, including expert witness fees, in Watters v. Department of Social Services, 08-0977, pp. 49-50 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, 1162, as follows:
A trial court has great discretion in awarding costs (including expert witness fees) and can only be reversed on appeal upon a showing of an abuse of that discretion. Pelleteri v. Caspian Group Inc., 02-2141, p. 19 (La.App. 4 Cir. 7/02/03), 851 So.2d 1230, 1241 (citing Mossy Motors, Inc. v. Sewerage & Water Bd. of City of New Orleans, 01-0486 (La.App. 4 Cir. 9/19/01), 797 So.2d 133); Jacobs v. Loeffelholz, 94-1123 (La.App. 4 Cir. 12/15/94), 647 So.2d 1282, 1287. The governing statutory provisions regulating the recovery of court costs are La. C.C.P. art.1920, La. R.S. 13:4533, and La. R.S. 13:3666....
“Article 1920 does not mean that there are no guidelines to govern the taxing of costs.” Johnson v. Marshall, 202 So.2d 465, 469 (La.App. 1st Cir.1967). One guideline is that only costs provided for by positive law are taxable against the party cast in judgment. Moolekamp v. Rubin, 562 So.2d 1134, 1136 (La.App. 4th Cir.1990)(citing Gore v. American Motorists Ins. Co., 244 So.2d 894 (La.App. 1st Cir.1971)). The jurisprudence has recognized that the 112types of costs recoverable as court costs are narrowly defined by statute. Tipton v. Campbell, 08-0139, pp. 26-28 (La.App. 4 Cir. 9/24/08), 996 So.2d 27, 44-46. The types of costs that are allowed to be taxed as costs are defined in La. R.S. 13:4533....
Expert witness fees for testifying at trial and for time spent preparing for that testimony are recoverable. Yuspeh v. Koch, 02-1179, p. 3 (La.App. 5 Cir. 5/28/03), 848 So.2d 96, 98 (citing Smith v. Roussel, 00-1672 (La.App. 1 Cir. 6/22/01), 808 So.2d 726); Orea v. Scallan, 32,622 (La.App. 2 Cir. 1/26/00), 750 So.2d 483, 493-94. The trial court is required to determine the reasonable amount of expert witness fees to be taxed as court costs based on “the value of time employed and the degree of learning or skill required.” La. R.S. 13:3666(A). The amount actually billed by the expert is not determinative of the reasonable amount taxable as costs. Yuspeh, supra (citing Mossy Motors, supra ).[9]
The determination of the reasonableness of an expert fee award turns on the particular facts and circumstances of *120 the case. Missouri Pacific R. Co. v. Nicholson, 460 So.2d 615, 629 (La.App. 1st Cir.1984). Although it is a case-specific determination, the jurisprudence has identified multiple factors to consider in determining a reasonable expert fee award, including the following factors:
• The amount of time consumed by the experts in compiling their reports;
• The amount charged to the landowner;
• The amount of time spent in preparing for trial;
• The amount of time spent in court;
• The expert’s expertise;
|13* The difficulty of the expert’s work;
• The amount of the award; and
• The degree to which the expert witnesses’ opinion aided the court in its decision.
State v. St. Charles Airline Lands, Inc., 03-1292, 03-1293, 04-20, pp. 21-22 (La.App. 5 Cir. 4/27/04), 871 So.2d 674, 688 (citing Natchitoches Parish Port Comm’n v. DeBlieux & Kelley, Inc., 99-313 to 99-315, p. 30 (La.App. 3 Cir. 3/22/00), 760 So.2d 393, 410-11); see also Tipton v. Campbell, 08-0139, p. 28 (La.App. 4 Cir. 9/24/08), 996 So.2d 27, 46 (citing City of Shreveport v. Noel Estate, Inc., 41,148, pp. 30-31 (La.App. 2 Cir. 9/27/06), 941 So.2d 66, 85-86). The jurisprudence has identified as the most important factor in determining an expert fee award the requirement that the award be reasonable. Nicholson, 460 So.2d at 629 (citing Town of Krotz Springs v. Weinstein, 401 So.2d 664 (La.App. 3d Cir.1981)) (stating that the “most important” factor is that “expert witnesses are entitled only to reasonable compensation.”).
III.
In this case, the Board contends that the trial court abused its discretion in awarding expert fees and costs by:
• Disregarding La. R.S. 13:3666 and on-point Louisiana jurisprudence requiring that expert fee awards must be reasonable, and creating a new rule for the award of expert fee awards in expropriation cases that is in direct conflict with well-established statutory law and jurisprudence;
• Awarding Mr. Williams an expert fee award in the amount of $103,554.68 for 446.16 hours of work in this matter (an amount that is nearly equivalent to the hours spent by lead counsel for 1732 Canal) when the trial court conceded it had “reservations” about the award because it was “high”;
114* Awarding 1732 Canal’s secondary, out-of-state appraiser Mr. Cantrell a $91,707.00 expert fee award when this Court has held those fees are unrecoverable because 1732 Canal made no showing that a local expert was unavailable;
• Awarding 1732 Canal’s experts fees for all “preparatory” work, including fees for time spent conferring with 1732 Canal’s attorneys and staff, when this Court has held that such fees are not recoverable; and
• Awarding 1732 Canal the total costs for all exhibits, including those exhibits not introduced into evidence at trial.
The Board further contends that, contrary to 1732 Canal’s contention, expert fee awards in expropriation cases do not impact a landowner’s constitutional right to be compensated to the full extent of its loss; rather, the Board points out that the award of expert fees and costs is separate from the damage award for just compensation. In support, the Board cites Rivet v. State, Dep’t of Transp. & Dev., 01-0961, p. 6 (La.11/28/01), 800 So.2d 777, 782; and State v. Miss Chub, L.L.C., 47,054, p. 4 (La.App. 2 Cir. 4/11/12), 92 So.3d 422, 425.
*121 To analyze the Board’s contentions we divide the issues it raises into the following four categories: (i) new standard for awarding expert fees; (ii) out-of-state expert’s fees, (iii) expert fees for consultation with counsel, and (iv) award of costs for exhibits not introduced into evidence. In addressing these categories, we utilize the data in the following chart as a frame of reference.
Transcript Pages Total Fee Expert Consumed by Charged Total Fee Witness Qualification Expert’s Testimony (Invoiced) Awarded
Mr. Cantrell Appraiser 102 pages $132,647.13 $ 91,707.00
Mr. Thorns Appraiser 88 pages $ 38,200.00 $ 34,000.00
Mr. Williams Architect 114 pages $106,969.03 $103,554.68
Mr. Blazek Environmental 75 pages $ 24,974.50 $ 21,528.29
JjsIV.
The first issue is whether the trial court erred in creating and applying a new standard for awarding expert fees in expropriation cases. According to the Board, the new standard the trial court applied was that it awarded compensation to the property owner (1732 Canal) for all documented (invoiced) expert fees that the property owner actually incurred. The Board contends that neither whether the property owner actually incurred expert fees nor whether the trial court had documentation (invoices) for the expert fees is relevant in determining the reasonableness of the expert fee award. The Board thus contends that the trial court abused its discretion by creating and applying this new standard to award expert fees for Mr. Williams and Mr. Cantrell in the amounts of $103,554.68 and $91,707.00, respectively. The Board characterizes these two awards as so outrageously excessive as to “shock the conscience.”
The Board’s contention that the trial court adopted and applied a new, incorrect standard is based primarily on the following colloquy between counsel and the trial court regarding the award for Mr. Williams’ trial preparation — $91,179.68 for 404.91 hours of “Property Inspections, Research, Document Review and Report Preparation”:
THE COURT:
Well, the way it’s indicated it just shows that this was all done for the research and it was for preparation, so it’s kind of hard for the Court to divide it up because I have no mechanism to do so.
MR. PIONTEK [THE BOARD’S COUNSEL]:
Well, I mean, just on the basis of reasonableness ... that’s about as many hours as Mr. Smith [lead counsel for 1732 Canal] here spent on the case, so it’s hard to understand that Mr. Williams spent 400 hours on that case and testified for a couple of hours at trial. That one I have real reservations and a hard time with, Judge.
J^THE COURT:
And I have some reservations about it as well but I don’t know how to divide it up. I have his affidavit saying that’s what he spent. I don’t have anything telling me he didn’t spend it.
MR. PIONTEK:
You can say it was excessive.
MR. SMITH [1732 CANAL’S COUNSEL]:
*122 That’s what he was paid and that was to formulate the whole cost of the place.
MR. PIONTEK:
You can find that excessive, Judge.
THE COURT:
It is high.
Ultimately, the trial court found that the total amount of $91,179.68 was recoverable. In so finding, the trial court stated: “[wjhile the Court finds that that amount is high, the Court has the documentation for it. I’ll have to go along with that.”
The Board emphasizes that both the trial court and 1732 Canal acknowledged that the award for Mr. Williams’ preparatory work was “high.” The Board contends that a high fee, by definition, cannot be a reasonable fee. In support, the Board cites Black’s Law Dictionary’s definition of reasonable, which is as follows: “1. Fair, proper, or moderate under the circumstances -treasonable pay>. 2. According to reason <your argument is reasonable but not convincing>.” Bryan A. Garner, Black’s Law Dictionary, 1293 (8th ed.2004). However, the comments under this definition point out that “ ‘[rjeasoning does not help much in fixing a reasonable or fair price.’ ” Black’s, supra. The Board’s reliance on Black’s definition of reasonable is thus misplaced.
1171732 Canal counters that even a high fee can be a reasonable fee. In support, 1732 Canal cites two cases in which substantial fees have been upheld in expropriation cases: St. Charles Airline Lands, Inc., 03-1292, 03-1293, 04-20 at pp. 21-22, 871 So.2d at 688 (affirming award of expert fees of $151,435.79 in 2004); DeBlieux & Kelley, Inc., 99-313 to 99-315 at p. 30, 760 So.2d at 410-11 (affirming award of expert fees of about $100,000.00 in 2000). The jurisprudence supports 1732 Canal’s contention that even a high fee award can be a reasonable fee. See Bo-urque v. Vinturella, 543 So.2d 640, 642 (La.App. 1st Cir.1989) (holding that “[w]hile we find these expert fees to be high, we do no find these fees so high as to constitute an abuse of discretion”); see also Rauch-Milliken Int’l, Inc. v. Halprin, 09-723, p. 7 (La.App. 5 Cir. 12/29/09), 30 So.3d 879, 884 (affirming an award of a “substantial” fee). Contrary to the Board’s contention, the trial court’s characterization of the fee awarded for Mr. Williams’ trial preparation as “high” does not dictate a finding that the fee was unreasonable; nor does it dictate a finding that the trial court abused its discretion in awarding the fee.
According to the Board, the trial court erred in relying on the amount of time Mr. Williams actually spent preparing for trial (404.91 hours). The Board contends that the trial court was required to determine a reasonable amount of time for Mr. Williams’ trial preparation given the particular facts and circumstances of this case. The Board cites SDS, Inc. v. State, Dep’t of Transp. and Dev., 07-0406, p. 8 (La.App. 4 Cir. 2/13/08), 978 So.2d 1013, 1018, for the proposition that the fees a property owner is entitled to recover for trial preparation are “directly related to the usefulness of the testimony to the trier of fact.” Id. (citing State, Dep’t of Transp. and Dev. v. Jacob, 491 So.2d 138 (La.App. 3d Cir.1986)). The Board thus contends that the following two factors should be considered in determining the | ^reasonableness of a fee for trial preparation: (i) the reasonably necessary time for preparation, and (ii) the relative usefulness of the expert’s testimony.
As to the first factor, the Board cites the Town of Krotz Springs case for the proposition that an expert fee award for an unreasonable amount of time spent by an expert witness in preparing for trial should be reduced. In the Town of Krotz Springs *123 case, the appellate court reduced an expert’s fee from the actual amount of time spent preparing to the amount reasonably necessary, reasoning:
According to the record Mr. Angers devoted approximately 13 full days in preparation for trial and one day in court. Although we have no reason to doubt the accuracy of this estimate of time spent by Mr. Angers on this case we do not believe that it is reasonable to compel plaintiff to pay for that amount of time and at the price agreed upon between Mr. Angers and defendants. Although the defendant landowner is entitled to be compensated for the expenses which he reasonably incurs in obtaining expert testimony, he is not entitled to compel plaintiff to pay an unreasonable amount.
Town of Krotz Springs, 401 So.2d at 667. Likewise, the Board contends that Mr. Williams’ actual preparatory time was unreasonable and that the award for his time should be drastically reduced.
In further support of its position, the Board characterizes Mr. Williams as a “peripheral expert” and contends that the award of 404.91 hours for his trial preparation is exorbitant. The Board points out that Mr. Williams was qualified as an architectural expert and that his tasks at trial were limited to the following two: (i) demonstrating that the building was structurally sound; and (ii) calculating the cost to rebuild the shell of the building, taking into account tax credits. According to the Board, the record reflects the following regarding Mr. Williams’ trial preparation:
• Mr. Williams did not draw architectural plans for 1732 Canal;
|13* Mr. Williams did not determine that the building was “structurally sound;” [rather, he relied on the opinions of others — he submitted Morphy Makof-sky’s report;]
• Mr. Williams did not estimate the fair market value of the subject property; [the jury’s sole task was to decide the fair market value of the Property;] and
• Mr. Williams’ cost estimate was only utilized by Mr. Cantrell in his cost approach to fair market value — an approach the other two in-state appraisers [(the Board’s appraiser, Gayle Boudousquie, and 1732 Canal’s other appraiser, Mr. Thorns) ] testified was inappropriate.
To put the hours Mr. Williams spent on this case in context, the Board points out that Mr. Williams’ invoiced hours almost exceeded 1732 Canal’s lead counsel’s (Mr. Smith’s) hours on the case. Given these circumstances, the Board contends that the bulk of Mr. Williams’ preparatory work was not reasonably necessary and should be disallowed.
On the second factor — the relative usefulness of the expert’s testimony — the Board cites State, Dep’t of Transp. and Dev. v. Nelken, 628 So.2d 1279, 1283 (La.App. 3d Cir.1993), for the proposition that the expropriating authority cannot be cast in judgment for expert fees of an expert whose calculations are not used by other experts in arriving at their ultimate value conclusions. In Nelken, the expert’s testimony regarding economic losses was rejected. Finding the expert’s fees could not be taxed to the expropriating authority, the appellate court reasoned:
The testimony of Dr. Harju as to Nelken’s economic losses has been rejected by this court. We note that Dr. Harju’s calculations were not used by the other experts in arriving at their conclusions, although real estate appraiser Randy LaCaze added Dr. Harju’s economic loss total to his own figures at the end of his report, in summarizing Nelken’s total damages from the expropriation. Essentially, *124 Dr. Harju’s testimony was not useful in determining the award to Nelken; therefore, the trial court’s award to Nelken of $2670 for Dr. Harju’s expert witness fee is reversed.
Nelken, 628 So.2d at 1283. Although the Board acknowledges that Mr. Williams’ testimony was not rejected (and thus this case is distinguishable from Nelken), it 12ncontends that Mr. Williams’ calculations of the cost to build a new shell were used only by Mr. Cantrell in conjunction with his cost approach, which the other two instate appraisers rejected. The Board contends that this is “a solid basis to strike any award of expert fees for Mr. Williams’ work.”
1732 Canal counters that the Board’s argument that Mr. Williams’ testimony was not useful and that it did not assist the jury is pure conjecture. 1732 Canal emphasizes that the jury interrogatories did not require a breakdown of the compensation awarded and that there was no indication in the amount awarded to suggest that the jury relied upon any one expert in particular. The record supports this contention. The jury was only asked to indicate the total just compensation for the Property and the improvements; “there was no jury interrogatory to ascertain how the jury arrived at its determination.” 1732 Canal I, 12-1370 at p. 9, — So.3d at
1732 Canal points out that expert fees are recoverable even if the expert’s opinion is not accepted in full. In support, it cites State, Dep’t of Transp. and Dev. v. Restructure Partners, L.L.C., 07-1745, p. 28 (La.App. 1 Cir. 3/26/08), 985 So.2d 212, 233, which held that “all that is required to impose expert witness fees against a political subdivision in accordance with La. R.S. 13:5112 is a substantive judgment in favor of the party requesting the award, provided the expert witness fees were reasonably necessary to the presentation of that party’s case.” Id. (citing Nicholson, 460 So.2d at 629). Based on this principle, 1732 Canal contends that the expert fees for all four of its testifying experts, including Mr. Williams, are recoverable.
The record reflects that Mr. Williams submitted detailed invoices of his fees and expenses for trial preparation and for testifying at trial on two separate days. 121 His testimony consumed 114 pages of trial transcript, which was more than any of 1732 Canal’s other experts. Moreover, he testified on two separate days. His testimony spanned numerous topics including the historical development of the New Orleans Central Business District area, the resurgence of adaptive reuse, the financial feasibility of renovating the building using tax credits (which he opined could have been obtained by a developer), the layout and physical characteristics of the building, the architectural significance of the building, the possible uses of the building, the replacement costs, and the ability to redevelop the building without full asbestos removal. To prepare for his testimony on these multiple topics, Mr. Williams thoroughly inspected the building, took numerous photographs, studied the history and construction of the building, and prepared a report. In so doing, Mr. Williams also assembled a team — a structural engineer, a “mechanical/electrical/plumbing” engineer, contractor, cost estimator, and environmental consultant (Mr. Blazek).
At trial, Mr. Williams opined on the financial feasibility of redeveloping the Property, the availability to a developer of tax credits, and a cost estimate to rebuild a shell equal to the building that was on the Property. As noted elsewhere, Mr. Cantrell testified at trial that he relied on Mr. Williams’ opinions and calculations in determining the value of the Property, albeit using the cost method. Given the multiple *125 topics and opinions that Mr. Williams’ trial testimony covered, the length of his trial testimony, and his extensive pre-trial preparation,[10] we cannot ^conclude the trial court abused its discretion in fixing the expert fee award for his services.
As noted, the Board also contends that the trial court applied the same incorrect new standard in awarding an unreasonably excessive fee for Mr. Cantrell’s services. The Board argues that although the trial court deducted $40,940.13 from Mr. Cantrell’s total invoiced fees of $132,647.13, it made a “blanket award” of $91,707.00 for all of the other fees that Mr. Cantrell documented.[11] The Board contends that the trial court should have further reduced, or totally denied, any award for Mr. Cantrell’s services. In support, the Board cites Mr. Cantrell’s status as 1732 Canal’s “secondary, out-of-state appraiser,” which is the next issue we address.
y.
The second issue is the reasonableness of the expert fees awarded for the out-of-state expert. 1732 Canal retained one out-of-state expert — Mr. Cantrell, an appraiser from Florida. 1732 Canal cites Myers v. Broussard, 96-1634, p. 25 (La.App. 3 Cir. 5/21/97), 696 So.2d 88, 101, for the proposition that an out-of-state expert’s fee is recoverable when the expert’s particular expertise and testimony are essential to the party’s recovery. 1732 Canal contends that such is the case here given Mr. Cantrell’s “vast, specialized expertise in eminent domain matters and in appraising large, unique, special-use buildings such as the building at 1732 Canal Street.”
| gjThe Board counters that the trial court erred in awarding 1732 Canal expert fees for its out-of-state appraiser. In support, the Board cites Welton v. Falcon, 341 So.2d 564, 573 (La.App. 4th Cir.1977), for the following rule regarding out-of-state experts:
A litigant need not use local expert witnesses, but is not entitled to additional fees if he uses out-of-state experts where local ones are available. In such a ease the court should set the expert fee according to the standard of the fee charged by local experts, and the litigant who chooses non-local experts must pay the difference.
The Board contends that 1732 Canal failed to establish that there were no in-state expert appraisers available, besides the two in-state appraisers that testified at trial, to value the Property and its improvements.
The Board contests 1732 Canal’s contention that retention of an out-of-state appraiser was justified by Mr. Cantrell’s expertise in valuing unique, special use property. The Board points out that nei *126 ther of the two in-state appraisers — Mr. Thorns nor Ms. Boudousquie — characterized the Property as a unique, special use property. To the contrary, the two instate appraisers impliedly criticized Mr. Cantrell for relying on the cost approach, which is based on the special use characterization of the property being valued.[12] The Board thus contends that this case is distinguishable from Yuspeh v. Koch, 02-1179, p. 5 (La.App. 5 Cir. 5/28/03), 848 So.2d 96, 99, in which no in-state expert was available to value alarm security companies.
The Board also points out that the fee awarded for 1732 Canal’s out-of-state appraiser, Mr. Cantrell, is nearly three times the fee charged by, and awarded for, |¾⅛ in-state appraiser, Mr. Thorns. The Board contends that not only was Mr. Cantrell’s fee unreasonable in amount, but also Mr. Cantrell’s opinion — which was based on the cost method — was discredited by the two in-state appraisers. The Board thus contends that Mr. Cantrell’s fee is out-of-line with awards made in similar cases.
Contrary to the Board’s contention, we find no abuse of discretion in the trial court’s expert fee award for the out-of-state appraiser, Mr. Cantrell. At trial, Mr. Cantrell opined that this case involves a unique, special use property. He explained that the building on the Property was unique in that it was designed for use as a residential facility, as opposed to other similar buildings that were designed for use as office buildings or hotels. He noted that the building was E-shaped and had about 1,036 apartment units. He opined that the building had multiple features that were so different that it was necessary to value the building itself, using the cost method, to determine the total value for the Property.
Although he acknowledged that he was not familiar with the City of New Orleans, Mr. Cantrell testified that he was familiar •with similar type developments in other areas. He cited as examples the downtown Philadelphia Bellview Hotel, which was purchased for $19 million and converted to housing, retail, and a hotel; and the Fillmore Hospital in Syracuse, New York. Mr. Cantrell testified he worked independently from 1732 Canal’s in-state appraiser, Mr. Thorns, in valuing the Property. Mr. Cantrell further testified he charged 1732 Canal a “standard fee” for his services.
Given Mr. Cantrell’s testimony regarding the unique, special nature of the Property and its improvements, the record arguably supports 1732 Canal’s position that no local expert was available with Mr. Cantrell’s credentials and expertise. | gr,Regardless of whether the retention of an out-of-state expert was justified, we find, as 1732 Canal contends, that the trial court adequately took Mr. Cantrell’s out-of-state status into account by deducting $40,940.13 — which included Mr. Cantrell’s travel expenses of $10,697.99 — from the actual amount invoiced by Mr. Cantrell. We thus find the Board’s contention that the trial court abused its discretion in awarding $91,707.00 for Mr. Cantrell’s expert fees unpersuasive.
VI.
The third issue is the recovery of expert fees for the preparatory time spent by the testifying experts consulting with counsel. The Board contends that the fees awarded for all four of 1732 Canal’s testifying ex *127 pert witnesses were excessive because the fees included preparatory time spent consulting with 1732 Canal’s counsel and its exhibit and demonstrative consultant, Mr. Hamill (acting as staff). Wetzka v. Big Three Industries, Inc., 409 So.2d 393, 399 (La.App. 4th Cir.1982) (reducing fee award by the amount itemized for the expert’s conference with counsel). 1732 Canal counters that the time spent by its experts in consultation with its counsel was not spent solely to assist its counsel in preparing for trial; rather, it also was spent preparing its experts for their trial-testimony and thus is recoverable.
The well-settled jurisprudential rule on which the Board relies is that “ ‘[t]he defendant can have taxed as costs the reasonable cost of time spent by the expert in gathering facts necessary for his testimony but not for time spent in consultation which only assists the attorney in preparation of litigation.’ ” Saden v. Kirby, 01-2253, p. 7 (La.App. 4 Cir. 8/7/02), 826 So.2d 558, 562-63 (quoting Albin v. Illinois Cent. Gulf R. Co., 607 So.2d 844 (La.App. 1st Cir.1992) (citing State Through Dep’t of Highways v. United Pentecostal Church of Hodge, 313 So.2d 886, 894 (La.App. 2d Cir.1975)); Wingfield v. State ex rel. Dep’t of Transp. and Dev., 03-1740, 03-1741, p. 6 (La.App. 1 Cir. 5/14/04), 879 So.2d 766, 770 (citing Smith v. Roussel, 00-1672, p. 6 (La.App. 1 Cir. 6/22/01), 808 So.2d 726, 731)). The distinction the jurisprudential rule makes is between time spent providing litigation assistance to counsel and time spent by the expert preparing himself for trial; the former is disallowed, the latter is allowed. Simply stated, “fees for time spent in consultation and other matters that simply benefit the attorney are not properly taxed as costs.” Yuspeh, 02-1179 at p. 3, 848 So.2d at 98; see also Baker v. Marcello, 533 So.2d 1057, 1059 (La.App. 4th Cir.1988) (disallowing fees incurred as a result of the plaintiffs “fishing expedition” attempting to link his hip complaint to his accident). The jurisprudence, however, allows recovery for an expert’s trial preparation and development of facts on which the expert’s opinions are based.
In the instant case, the trial court, in fixing the awards for both of 1732 Canal’s expert appraisers, Mr. Cantrell and Mr. Thorns, disallowed amounts for time spent consulting with counsel. As to Mr. Cantrell, the trial court, agreeing with the Board, disallowed the invoiced amount for “Strategy/Conferences, Property Inspection.” Indeed, the trial court disallowed the entire invoiced amount of $15,851.25 even though part of that amount was for property inspection. Likewise, as to Mr. Thorns, the trial court disallowed $2,200.00, which was invoiced for eleven hours of “Consultation.” As to all four testifying experts, the trial court, agreeing with the Board, disallowed all amounts related to depositions and deposition preparation.[13]
_[gjThe Board contends that additional amounts should be disallowed as to all four testifying experts for consultation with counsel and Mr. Hamill. We find this contention unpersuasive. The jurisprudence has recognized the reality that a complex case, such as this expropriation case, may require extra expert trial preparation time. See Northwest Ins. Co. v. Borg-Warner Corp., 501 So.2d 1063, 1065 (La.App. 2d Cir.1987) (noting that “several factors such as complexity and length of the trial, necessity for pre-trial preparation, and the degree and significance of the expertise are relevant to the amount of the *128 expert fee” and citing La. R.S. 13:3666). Indeed, this court in Vela, 00-2221 to 00-2224 at p. 31, 811 So.2d at 1283, cited the complexity of the case and the significance of the expert testimony in valuing a massive amount of property as justifying “a more liberal award of costs.” Id.
As to expert appraisers, in particular, the jurisprudence has noted that the relevant factors to consider include “ ‘whether the preparatory work done by the appraiser was reasonably necessary, whether it actually tended to show the value of the property taken or severance damages, and whether the conclusions he reached based on that preparatory work were of some usefulness in determining the award which should be made.’ ” Nicholson, 460 So.2d at 629 (quoting State, Dep’t of Highways v. Gordy, 322 So.2d 418, 423 (La.App. 3rd Cir.1975)). Additional considerations include “‘the value of the property being taken and the amount of severance damages sustained by the landowner.’ ” Id.
Based on our review of the record, we cannot conclude that the trial court abused its discretion in refusing to further reduce the expert fee awards for the four ^testifying experts for their time spent consulting with counsel and Mr. Hamill. All four of 1732 Canal’s testifying experts attested in their affidavits that all of the fees set forth in their invoices submitted to the trial court in connection with the Motion were necessary to their presentation of their testimony at trial. The trial court deducted certain amounts from the invoiced amounts for each of the four experts. Given the complicated nature of this expropriation case, the huge size of the building at issue, the large sum of money involved, and the amount of preparation the experts attested was required to prepare for testifying at trial, we cannot conclude that the trial court abused its discretion in fixing the expert fee awards for the four testifying experts.
VII.
The fourth issue is the inclusion of costs for exhibits not introduced into evidence. The Board’s contention is based on the trial court’s award of $34,000.00 of the $36,800.00 charged by Mr. Hamill, who was 1732 Canal’s exhibit and demonstrative consultant. The Board points out that Mr. Hamill’s fee included $9,500.00 for 95 hours of “[e]xhibit prep/organization (trial prep).” The Board contends that this portion of the award is problematic in that it includes compensation for all of the 181 exhibits that Mr. Hamill prepared, despite that only a fraction of those exhibits— approximately 56 exhibits (30%) — were introduced at trial. The Board cites Delaney v. Whitney National Bank, 96-2144, 97-0254, p. 18 (La.App. 4 Cir. 11/12/97), 703 So.2d 709, 720, for the proposition that “ ‘exhibits used in court to assist the jury but not introduced in evidence are not properly taxed as costs [because] ... [n]o one can be sure such exhibits helped the jury.’ ” Id. Based on Delaney, the Board contends that because only 30% of the exhibits were introduced, only 30% of the $9,500.00 award for exhibit-related fees should have | g3been awarded ($2,850.00). The Board thus contends that the costs awarded for Mr. Hamill’s services should be reduced by $6,650.00 (70% of the $9,500.00), at a minimum. The Board also argues that Mr. Hamill’s fee for exhibit-related work is less justifiable because many of the exhibits were not created by him; rather, many of the exhibits simply were photographs lifted from the appraisal reports or downloaded from the Orleans Parish Assessor’s website.
1732 Canal counters that the trial court’s award for Mr. Hamill’s services was not an abuse of discretion. It points out that *129 costs directly associated with creating and presenting demonstrative evidence are recoverable under La. R.S. 13:4533, which includes “all other costs allowed by the court.” It also points out that this phrase in La. R.S. 13:4533 has been broadly construed to permit recovery of a wide variety of costs found vital to trial presentation. In support of this position, 1732 Canal cites the following cases: Haas v. Audubon Indemnity Co., 98-566 (La.App. 3 Cir. 10/21/98), 722 So.2d 1020, writ granted in part on other grounds, 98-2885 (La.2/5/99), 737 So.2d 736 (awarding fees for a mechanical engineer, an electrical engineer, and an asbestos removal specialist who collectively assisted in preparing a survey used by a testifying architect expert, whose fee was also recoverable); Raymond v. Government Employees Ins. Co., 09-1327, pp. 18-19 (La.App. 3 Cir. 6/2/10), 40 So.3d 1179, 1193-94 (awarding the costs to enlarge exhibits and the entire cost of a survey); State, Through Dep’t of Highways v. Mims, 336 So.2d 24, 31 (La.App. 3d Cir.1976) (characterizing a photographer as a professional and taxing photographer’s expert fee as costs); and Roy v. Gupta, 606 So.2d 940, 946 (La.App. 3d Cir.1992) (awarding the costs of playing video deposition tapes during the trial). 1732 Canal contends that “[n]one of these cases hinged on whether every single one of the exhibits in question [was] |snactually admitted into evidence.” Regardless, 1732 Canal contends that the trial court took into consideration the fact that all the exhibits were not introduced into evidence by awarding only $33,300.00, instead of the total invoiced amount of $36,800.00. It emphasizes that the Delaney case was not an expropriation case and that the court in Delaney thus was not required to conform to the constitutional mandate that a landowner be compensated to the full extent of his loss.
1732 Canal further contends that Mr. Hamill’s services were vital to its presentation to the jury. It explains that the exhibits and demonstratives that Mr. Hamill created were prepared to break down long, complex reports and expert testimony into graphics more easily understood by the jury. It further explains that as a result of Mr. Hamill’s work it was able to “streamline” the testimony of its expert witnesses for presentation at trial. It points out that the Fifth Circuit recently affirmed an award for Mr. Hamill’s similar services in State, Dep’t of Transp. and Dev. v. Monteleone, 11-1013, pp. 31-32 (La.App. 5 Cir. 11/13/12), 106 So.3d 153, 173, writ denied, 13-0118 (La.3/1/13), 108 So.3d 1179. In affirming the award, the Fifth Circuit in Monteleone, reasoned as follows:
At the hearing of this matter, the landowners’ attorney testified that Mr. Hamill spent 169 hours of trial preparation and design, in which he met with the experts and attorneys and was able to “streamline” the testimony for presentation to the court. Without this preparation by Mr. Hamill, the experts and the attorneys would have incurred additional time, and additional costs, in presenting this case. In addition, Mr. Hamill prepared the demonstratives that were presented in court and handled the audio-visual presentation during trial which streamlined the process. Considering the record before us, we cannot say that the trial court abused its discretion in its award of costs.
Monteleone, 11-1013 at p. 32, 106 So.3d at 173. Likewise, 1732 Canal contends that the trial court in this case properly awarded the costs for Mr. Hamill’s similar services that streamlined the presentation of the evidence.
|s1In further support of the award, 1732 Canal points out that the trial court ob *130 served the “extensive nature of Mr. Hamill’s preparation of trial exhibits and his attendance and constant participation in the entirety of the week-long trial.” 1732 Canal thus contends that the trial court’s evaluation of the reasonableness of Mr. Hamill’s expenses should not be disturbed on appeal.
We find 1732 Canal’s arguments regarding the appropriateness and reasonableness of the trial court’s award of costs for Mr. Hamill’s services persuasive. Hence, we reject the Board’s contention that the costs awarded for Mr. Hamill’s services should be reduced.
VIII.
1732 Canal contends that its answer to the Board’s appeal encompasses not only a request for additional attorneys’ fees for its counsel’s post-judgment work on appeal, but also a request to increase the 18% attorneys’ fees award to 33 1/3%, or in the alternative to 25%. 1732 Canal, in its appellee’s brief, labels itself as a “cross-appellant” and sets forth the following assignment of error: “[t]his Court should increase the award of attorney fees to 1732 Canal Street from eighteen percent (18%) to thirty-three and one-third percent (33 1/3%), or, in the alternative, to twenty-five percent (25%).” The Board, on the other hand, contends that because 1732 Canal’s answer did not specifically pray that the 18% attorneys’ fee award be increased, that issue is not before us on appeal. We agree.
An appellee’s answer to an appeal is governed by La. C.C.P. art. 2133, which provides in pertinent part:
A. An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record | whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.
La. C.C.P. art. 2133(A). The jurisprudence has construed Article 2133 to mean that “an answer to the appeal operates as an appeal only from those aspects of the judgment which the answer complains.” Samuel v. Baton Rouge General Medical Center, 98-1669, pp. 5-6 (La.App. 1 Cir. 2/18/00), 757 So.2d 43, 46 (citing Lolan v. Louisiana Industries, 95-602, p. 1 (La.App. 3 Cir. 11/2/95), 664 So.2d 616, 618, n. 1).
Although an answer to an appeal and an appeal may serve the same function, they are not interchangeable. Clark v. Schwegmann Giant Supermarket, 96-2301, p. 5 (La.App. 4 Cir. 1/13/99), 740 So.2d 137, 141 (La.App. 4 Cir.1999). When a party files an answer, as opposed to a cross appeal, the scope of review is limited to the claims expressly stated in the answer. Indeed, an appellee is required to state the relief demanded in its answer to the appeal. La.C.C.P. art. 2133. Unlike an answer to an appeal, “[a]n appeal entitles the appellant to raises [sic] all issues without specifying them in either the notice or order of appeal.” Clark, 96-2301 at p. 5, 740 So.2d at 141.
Explaining the difference between an answer to an appeal and a cross-appeal, we noted in Clark that:
Essentially, an “answer to an appeal” is itself an appeal, except that the answer must specifically state the relief requested, while an appeal usually seeks review of all parts of the judgment.
*131 Generally, an answer to an appeal operates as an appeal only of those parts of the judgment complained about in the answer. However, the courts often interpret statements in an answer liberally to cover issues the appellee contests in view of the public policy favoring appeals.
1 wId. (quoting Plotkin, LOUISIANA CIVIL PROCEDURE, Art. 2138, § l)(internal citations omitted). Although an answer to an appeal is a cheaper, less complicated procedure, “the trade off is that under LSA-C.C.P. art. 2133 the answer must state ... what the ‘relief demanded’ is, and the answer operates as an appeal only from those matters ‘of which [the appellee] ... complains in his answer.’ ” Clark, 96-2301 at p. 7, 740 So.2d at 142 (quoting La. C.C.P. art. 2133).
Applying the above principles, we find 1732 Canal’s answer to the appeal requests only additional attorneys’ fees for its counsel’s post-judgment work on appeal. The pertinent averments in its answer are as follows:
• [T]he Landowner files this Answer, seeking an increase in the amount of attorneys’ fees awarded by the Court. The Landowner respectfully submits that the amount of attorneys’ fees awarded by the trial court did not contemplate any fees that might be incurred on appeal, and considered only the attorneys’ fees at the trial court level.
• Additional fees and costs were incurred after the date of hearing regarding the Landowner’s attorneys’ fees and will be incurred in connection with the Landowner’s response to the Board’s appeal. The Landowner’s additional attorneys’ fees and costs should be awarded as additional just compensation owed under the Louisiana and federal Constitutions to make the Landowner whole for the taking of its property. In similar circumstances in expropriation cases, appellate courts have, as a matter of course, awarded attorneys’ fees incurred in connection with appeals of expropriation cases.
• [T]he Landowner respectfully prays that this Honorable Court: ... increase the amount of attorneys’ fees awarded to compensate the Landowner for all additional attorneys’ fees and costs incurred.
Nowhere in its answer does 1732 Canal mention the trial court’s 18% attorneys’ fee award. Given its failure to mention or to assign as error the 18% attorneys’ fee award, 1732 Canal’s answer cannot be considered as raising that issue on appeal. The sole issue its answer raises is whether 1732 Canal is entitled to an additional award of attorneys’ fees for its counsel’s post-judgment work on appeal.
IsmAs to the issue raised on appeal, we find the record before us is insufficient to determine the appropriate additional award of attorneys’ fees for 1732 Canal’s attorneys’ post-judgment work on appeal. The difficulty in determining this additional award of attorneys’ fees is the result, in part, of the fact that the post-judgment work on appeal encompasses not only the instant appeal, but also the prior appeal of the judgment on the merits — 1732 Canal I. We thus find it appropriate to remand to the trial court for a determination of the additional award of attorneys’ fees to which 1732 Canal is entitled for both appeals. See Monteleone, 11-1013 at p. 34, 106 So.3d at 174 (remanding for a hearing on the issue of attorneys’ fees for work on appeal).

DECREE

For the forgoing reasons, the judgment of the trial court is affirmed. This case is remanded to the trial court for a determi *132 nation of the appropriate additional award of attorneys’ fees owed for post-judgment work on appeal.
AFFIRMED AND REMANDED.

. As discussed elsewhere in this opinion, we find that 1732 Canal's answer to the appeal raises only the issue of whether it is entitled to an additional award of attorneys’ fees for its counsel’s post-judgment work on appeal.

. The parties made several stipulations including that "[t]he only evidence as to the full extent of 1732 Canal Street’s loss will be the value of the subject property, which shall be based upon the opinions of the experts, as well as the facts and information they relied upon in reaching their conclusions.” The parties also stipulated that ”[t]he appraisal reports of the appraisers for each party shall not be admissible; however summaries in compliance with the statutes, photographs of the subject property, and photographs of comparable properties may be admissible at the trial of this matter. Demonstrative exhibits containing data and summary information, otherwise admissible, may also be used.”

. As 1732 Canal points out, Mr. Blazek’s testimony was necessitated by the Board’s retention of United States Risk Management, L.L.C. ("U.S. Risk”) to testify regarding the asbestos abatement required to demolish (implode) the building on the Property. Mr. Bla-zek testified that the necessary environmental remediation cost to renovate the building would be $1,045,065.00. He further testified that the Board’s environmental remediation expert, U.S. Risk, overestimated the remedia *114 tion cost by $2.6 million. Mr. Blazek, however, acknowledged that his calculation was based on renovating the building; whereas, U.S. Risk's calculation was based on demolishing it.

. As noted at the outset, this court in the prior appeal affirmed the jury's award. Board of Sup’rs of Louisiana State University and Agr. and Mechanical College v. 1732 Canal Street, L.L.C, 12-1370 (La.App. 4 Cir. 6/19/13), - So.3d-, 2013 WL 3078512 (“1732 Canal I''). This court denied the Board’s application for rehearing on September 5, 2013. The Board filed an application for supervisory writ with the Louisiana Supreme Court (No. 2013-C-2383), which was pending at the time this opinion was handed down.

. La. R.S. 13:5112(A) provides:
In any suit against the state or any department, board, commission, agency, or political subdivision thereof, the trial or appellate court, after taking into account any equitable considerations as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may grant in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, an award of such successful party's court costs under R.S. 13:4533 and other applicable law as the court deems proper but, if awarded, shall express such costs in a dollar amount in a judgment of the trial court or decree of the appellate court.

. La. C.C.P. art. 1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

. La. R.S. 13:4533 provides:
The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.

. La. R.S. 13:3666 provides in pertinent part:
A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
*119 (1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.
(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.

. See also Town of Krotz Springs v. Weinstein, 401 So.2d 664, 667 (La.App. 3d Cir.1981) (noting that the amount agreed upon between the expert witness and the party calling him is not a criterion as to the amount of expert witness fees to be taxed as costs); Mathis v. City of DeRidder, 599 So.2d 378, 392 (La.App. 3d Cir.1992) (noting that "[a]n agreement entered into by a party as to the fee which an expert is to receive, or the statement of the expert as to his charges or even the actual payment of such a fee to the expert, [is] not binding on the court and [is] not ... to be used by the court in fixing the expert fees which are to be assessed as costs in the suit”); Boseman v. Orleans Parish School Bd., 98-1415, p. 9 (La.App. 4 Cir. 1/6/99), 727 So.2d 1194, 1199 (noting that courts are not bound by agreements concerning expert witness fees, by the expert’s statements concerning his charges, or by the actual fee paid to an expert witness).

. The record reflects Mr. Williams also prepared an affidavit, which was introduced at trial, regarding the inability to rebuild on the Property following the planned implosion. In that affidavit, Mr. Williams explained that the building was supported by 1,200 friction pilings that were driven to "76 feet in depth.” He further explained the difficulty of removing such friction pilings. As a result, he opined that any new construction on the Property would have to be placed on top of the existing friction pilings. After the implosion, he opined that it would be unlikely that the Property could “support any use other than as vacant land or green space.” The significance of this affidavit is that it supports the trial court's implicit finding that Mr. Williams’ involvement in the trial and his trial preparation were extensive.

. In calculating the award for Mr. Cantrell’s services, the trial court disallowed four parts of 1732 Canal’s request for Mr. Cantrell’s fees — "Strategy/Conferences, Property Inspections 26.25 hours $15,851.25”; "Prepare for deposition; Deposition 45 hours $13,980.00”; "Travel $10,697.99”; and "FedEx $410.89.”

. At trial, Mr. Cantrell explained that the cost method is used when valuing "a special [use] type of property that doesn’t sell in the market very often so that there are no compa-rables.”

. The excluded amounts for depositions and deposition preparation were as follows: for Mr. Cantrell, $13,980.00; for Mr. Thorns, $2,000.00; for Mr. Williams, $1,950.00; and for Mr. Blazek, $2,625.00.