EDITH D. JONES, Appellant, *v.* GRAHAM
STARR JONES, Respondent.

No. 6147

December 21, 1970                    478 P.2d 148

[Rehearing denied January 26, 1971]

*Gordon L. Hawkins,* of Las Vegas, for Appellant.

*Morris, Walker & Pilkington,* of Las Vegas, for Respondent.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal in a post-divorce action from an order denying appellant's (plaintiff below) motion to amend Findings of Fact and Conclusions of Law and to Alter or Amend the Judgment. We reverse the order and remand the action for further proceedings in accordance with this opinion.

Edith and Graham Jones were married in Massachusetts on July 6, 1934. Three children were born of the marriage. On April 22, 1963, the parties entered into a separation agreement in New York, their new residence, in which Graham agreed to pay Edith $225 per month for her support so long as she did not remarry, and $87.50 per month for the support of two of their children who were still minors. The agreement provided, among other things, that if the husband failed to perform his obligation, the wife could, at her election, sue for breach of the contract, or seek such other remedies in law or equity as might be available to her. The agreement also permitted either party to sue for absolute divorce in any competent jurisdiction, to require the agreement to be offered in evidence, and if accepted by the court incorporated by reference in the decree. But it provided that notwithstanding incorporation of the agreement into the decree, it was not to be merged in the decree but was to survive and be enforceable as a contract binding upon the parties for all time. The agreement provided it was to be construed in accordance with the laws of the State of New York.

Shortly after execution of the agreement by the parties, Graham moved to Nevada, sought and received a default decree from Edith, and immediately remarried. He and his second wife are now parents of a 6-year old daughter. The separation agreement was not offered in the action nor did the Nevada court acquire personal jurisdiction over Edith.

In September, 1965, Graham commenced depositing $75 of the $175 per month he was obligated to pay his former wife for child support in a bank in Las Vegas as an educational fund for his two boys. Those accumulated funds are still available in

that bank. In 1966, Edith initiated a Uniform Reciprocal Enforcement of Support Act proceeding in New York against Graham. In the Nevada court where it was tried, the District Attorney of Clark County, on behalf of Edith, entered into a stipulation with Graham's counsel, which was approved by the court, under which Graham agreed to send $100 per month to his former wife for the support of the two boys and continue to accumulate $75 per month as an educational fund for their benefit.

On June 22, 1967, Graham ceased paying the $225 per month alimony payment to Edith.

On December 23, 1968, Edith commenced an action in the Nevada court for breach of the New York separation agreement, alleging $4,050 due for unpaid alimony and $3,150 due for unpaid child support. Graham answered the complaint, raised affirmative defenses to it and filed a counterclaim.

As affirmative defenses, Graham claimed (1) the complaint failed to state a claim upon which relief could be granted, (2) Edith was bound by the stipulation with the District Attorney permitting the $75 per month to be placed in a trust account, (3) Edith had breached the agreement by frustrating the father-son relationship by refusing to communicate the state of health of the two boys to him and by preventing the boys from communicating with him or visiting with him, and therefore was estopped from relying upon the agreement, (4) Edith had so maliciously and intentionally breached the agreement that she had repudiated it, (5) his financial condition had so changed from the time the agreement was executed that it would be inequitable and unjust to require him to pay the sums sued for, and (6) by reason of his changed financial condition he was incapable and unable to perform under the agreement.

As counterclaims, Graham alleged (1) when he entered the agreement he thought he would be able to carry it out, but his income had decreased greatly and he had additional responsibilities because of his second marriage, making the agreement inequitable, unreasonable, and unfair in its terms and it should therefore be declared null and void, or in the alternative, be modified to make it reasonable and equitable, (2) Edith's actions in frustrating the father-son relationship constitute a repudiation or breach of the agreement and it should be modified or declared null and void, and (3) Edith had intentionally frustrated the jurisdiction of the Nevada court and prevented the agreement from being incorporated into the decree of divorce and used the Reciprocal Enforcement of Support Act to harass him. For the foregoing wrongs of Edith, Graham

prayed that (1) Edith take nothing by her complaint, (2) the agreement be declared null and void or be modified, and (3) he be awarded costs and attorneys' fees.

January 28, 1970, Edith moved to dismiss Graham's counterclaims. On April 22, 1969, the motion was granted as to counts one and three, and denied as to count two. No appeal has been taken from this order.

Following the trial, the judge found (1) Graham and Edith had entered into an agreement for valuable consideration, (2) unpaid alimony installments amounted to $4,050 as of the date of the complaint in this action, (3) unpaid child support amounted to $3,000, (4) Graham presented no defense to the amounts, (5) Graham had created two trust accounts which he should be ordered to apply to the $3,000 in arrears, with the balance to be applied on future installments, such funds to be held as trust funds by Edith for the minor children, and (6) future installments of support for the children should be reduced to $75 per month each and future installments of alimony should be reduced to $50 per month.

The conclusions of law were that (1) Edith was entitled to judgment in the amount of $4,050 for the support of herself, and the sum of $3,000 for the support of the children, (2) the sums held in the trust accounts were to be turned over to Edith in satisfaction of the $3,000 arrears, and the balance was to be applied to future installments as they became due, and (3) future payments for child support provided in the agreement were to be reduced to $75 per month per child, and the alimony payment was to be reduced to $50 per month.

Judgment was entered in accordance with the findings of fact and conclusions of law on September 30, 1969. On October 10, 1969, Edith moved to amend the findings of fact and conclusions of law and to alter or amend judgment. By her motion, Edith attempted to (1) eliminate paragraph 6 of the findings of fact and paragraph 3 of the conclusions of law, (2) add paragraphs to the findings of fact and conclusions of law and judgment providing for interest at 7 percent on each installment from the time it became due, costs and attorneys' fees.

December 5, 1969, the findings of fact, conclusions of law, and judgment were amended to provide for interest at 7 percent from September 30, 1969. The motion was denied in all other respects.

The issues requiring our consideration are these:

I. Whether the lower court exceeded its jurisdiction in modifying the separation agreement.

II. Whether the trial court erred in awarding interest from

the date of the judgment instead of the date each installment fell due.

III. Whether the lower court erred in failing to award costs to the plaintiff.

IV. Whether the lower court erred in failing to award the plaintiff any attorney fees.

1. New York law, under which the agreement must be construed, does not permit modification of a separation agreement when its enforcement as a private contract is sought and it is not merged in a divorce decree, so long as it is not impeached or cancelled in a manner permitted by law. Carlson v. Carlson, 53 N.Y.S.2d 735 (S.Ct.App.Div. 1945); Millman v. Millman, 207 N.Y.S.2d 159 (S.Ct.Spec. Term 1960); Weintraub v. Weintraub, 96 N.E.2d 724, 728 (N.Y. 1951). In Goldman v. Goldman, 26 N.E.2d 265 (N.Y. 1940), a leading case on the point, modification of an alimony award from $21,000 per annum to $14,000 per annum was allowed but the court made it very clear that it was the court decree adopting a separation agreement it was allowing to be modified and not a separation agreement surviving or independent of the decree. In Goldman the New York Court of Appeals said, "The court, in the exercise of its powers conferred by statute, directed the defendant to pay the sum which both parties, at that time, agreed would be a suitable provision for his wife and children. That direction might be enforced in manner provided by the statute, though the contractual obligation could not be so enforced; and might be modified thereafter by the court, though the contractual obligation could not be so modified without the consent of both parties." Accord McMains v. McMains, 206 N.E.2d 185 (N.Y. 1965).

Massachusetts follows the same rule holding that a court can modify its decree but it cannot modify a contract between the parties when it is not a part of the decree. Schillander v. Schillander, 29 N.E.2d 686 (Mass. 1940).

Nevada's law takes an equally strong position on this question. While an agreement between the husband and wife is not binding upon the court in the original divorce proceeding, Lewis v. Lewis, 53 Nev. 398, 2 P.2d 131 (1931); Drespel v. Drespel, 56 Nev. 368, 45 P.2d 792 (1935), in a post-divorce action on a nonmerged agreement for support, the agreement controls the court's award and it does not have jurisdiction to modify that agreement or grant different relief. Ballin v. Ballin, 78 Nev. 224, 371 P.2d 32 (1962). See also Aseltine v. District

Court, 57 Nev. 269, 62 P.2d 701 (1936), and Rush v. Rush, 82 Nev. 59, 410 P.2d 757 (1966).

2. This is an action for damage for breach of contract. NRS 99.040(1) applies to all contracts and requires interest to be paid on all sums from the time they become due. Paradise Homes v. Central Surety, 84 Nev. 109, 437 P.2d 78 (1968); Close v. Isbell Constr. Co., 86 Nev. 524, 471 P.2d 257 (1970). Clearly, the separation agreement fixed the times when the alimony and child support payments became due. The installments of $225 per month for alimony and the installments of $87.50 per month for each child were payable in advance on the 22nd day of April, 1963, and on the 22nd of each month thereafter until the entitlement ended as provided in the contract. Edith was deprived of the use of those funds as each installment came due. She is entitled to interest from those dates. See Day v. Day, 82 Nev. 317, 329, 417 P.2d 914 (1966) (concurring opinion, Thompson, J.).

3. Edith contends the lower court erred in refusing to award her costs as the prevailing party. We agree. This is an action for breach of contract, not in equity as contended by Graham. NRS 18.020(3) provides for the allowance of costs in actions for the recovery of money or damages where the plaintiff recovers over $300. This allowance is mandatory and is not subject to the trial court's exercise of discretion. Randano v. Turk, 86 Nev. 123, 466 P.2d 218 (1970). See also Nelson v. Paul, 68 Nev. 365, 233 P.2d 857 (1951). If the action were one in equity, award of costs would be discretionary with the trial court. Magee v. Whitacre, 60 Nev. 202, 96 P.2d 201 (1939).

4. The last issue concerns the failure of the trial court to award Edith an attorney's fee. This is a contract action and her entitlement to an attorney's fee must stand or fall on the provisions of NRS 18.010(3)(a)[1] and not under NRS 125.180(1).[2]

---

[1]NRS 18.010(3)(a) reads: "The plaintiff as prevailing party when the plaintiff has not recovered more than $10,000; or . . . ."

[2]NRS 125.180(1) reads: "Where the husband, in an action for divorce, makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the district court may make an order directing entry of judgment for the amount of such arrears, together with costs and disbursements not to exceed $10 and a reasonable attorney's fee."

In the trial of this case, Edith was awarded damages of $7,050 which would have entitled her to an award of an attorney's fee in the court's discretion. However, none was awarded, but the trial judge gave no reason or explanation for the denial. We think he should have stated his reasons, to enable this court to undertake a reasonable review. In that sense, he violated his discretion. Iske v. Metropolitan Utilities District of Omaha, 157 N.W.2d 887 (Neb. 1968).

However, on the retrial of this matter in determining whether the damages recovered by Edith exceed $10,000, the interest recovered on the past due installments of alimony and child support should be added to the amount of the installments, and if that total exceeds $10,000 then of course she would not be entitled to an attorney's fee absent an agreement to pay such item. We believe that prejudgment interest amounts to "damages for delay in payment of a contractual obligation and does not represent, in the true sense of the word, interest as understood in banking circles." Triangle Elec. Supply Co. v. Mojave Elec. Co., 238 F.Supp. 815, at 818 (W.D.Mo. 1965).

Accordingly, the judgment of the lower court is reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion.

ZENOFF, BATJER, and THOMPSON, JJ., and WILKES, D. J., concur.