DAVID MAYS AND CONNIE GRIFFO, APPELLANTS, *v.* ANGELO TODARO AND LISA TODARO, HUSBAND AND WIFE, RESPONDENTS.

No. 10820

April 6, 1981                                                  626 P.2d 260

*George W. Abbott,* Minden, for Appellants.

*Bergmann & Mollath,* Reno, for Respondents.

## OPINION

By the Court, BATJER, J.:

Appellants Griffo and Mays, real estate agents, contacted the Todaros, respondents, in May of 1974, indicating that they represented a buyer who was interested in purchasing respondents' property located in Incline Village, Nevada, known as Angelo's Back Door Bar & Restaurant. The asking price for the property was $285,000, requiring a down payment of $65,000. Soon after the down payment of $65,000 was agreed upon, appellants informed respondents that the buyer would not be able to pay that amount in a single payment.

On June 16, 1974, an agreement for the down payment was reduced to writing requiring a $1,000 earnest money deposit, $19,000 cash to open escrow, and $30,000 cash to be paid 90 days prior to closing of escrow. An additional sum of $15,000 cash was to be paid within ninety days of the opening of the escrow.

Following a standard provision in the agreement covering a broker's commission upon a buyer's default, appellants added

a handwritten provision,[1] the interpretation of which is a central issue in this case.

Respondents relinquished possession of the property to the buyers, who paid $20,000 of the agreed $65,000, then defaulted. The escrow never closed and respondents were unable to regain possession of the property until the buyers eventually executed an agreement of forfeiture.

Respondents then requested appellants to surrender the $20,000 they were holding. (The buyers had deposited this sum with the appellants rather than into the escrow.) In response, appellants returned only $10,000, claiming the retained $10,000 as their commission.

Respondents subsequently brought suit against appellants for: (1) The sum of $9,500 ($10,000 less $500 which they acknowleged as the broker's commission); (2) attorney fees; and (3) $62,344 for the loss of business, income and profits, good will, and special damages due to the buyers occupying the premises which they alleged was occasioned by the appellants' misrepresentations of buyers' financial condition. Judgment was entered against appellants in the amount of $9,500 plus interest and costs, together with an attorney's fee in the amount of $2,500.

In their appeal[2] appellants claim the trial court misinterpreted the meaning of the provision allowing a broker's commission, and erred when it granted an attorney's fee and allowed an expert witness fee as part of the costs. Appellants further contend that they and not respondents should have been awarded an attorney's fee.

1. Appellants' contention that they are the parties entitled

---

[1]The provision for a broker's commission in event of buyer default, initialed by the parties, reads as follows:

The undersigned accepts the above offer based on the terms and conditions herein, and agrees to pay the above signed broker as commission the sum of $10,000.00 or one-half of the deposit should same be forfeited by buyer, provided said amount shall not exceed the full amount of said commission. To be paid after final payment of $65,000 has been deposited. [The words underlined were handwritten.]

[2]Actually appellants only appeal from the order of the district court entered on January 24, 1978, denying their motion for a new trial or for amendment of judgment, and there is nothing in the record prior to the filing of appellants' brief with this court to indicate an appeal from the judgment entered by the district court on December 20, 1977. Although appellants have not complied with NRAP 3(c), we deem the appeal to be from the judgment upon the authority of Casino Operations, Inc. v. Graham, 86 Nev. 764, 476 P.2d 953 (1970).

to an attorney's fee is specious. A defendant as a prevailing party in a law suit is entitled to the allowance of an attorney's fee when the plaintiff has not sought recovery in excess of $10,000. NRS 18.010(2)(c). In this case, the plaintiffs (respondents) sought recovery in excess of $10,000. Thus defendants (appellants) would not have been entitled to an attorney's fee even if they had prevailed.

2. The language in the clause regarding broker's fees is ambiguous and the trial court, in order to render the agreement fair and rational, gave the clause its most reasonable interpretation. *See* Club v. Investment Co., 64 Nev. 312, 182 P.2d 1011 (1947). The extrinsic evidence in the record supports this interpretation. Both parties to the agreement testified that it was their intention that respondents would not pay appellants the $10,000 commission unless and until the entire down payment of $65,000 had been paid into escrow.

3. As appellants contend, the judgment favored respondents in the amount of $11,710, including principal and prejudgment interest. If we follow the rule announced in Jones v. Jones, 86 Nev. 879, 478 P.2d 148 (1970), where both prinicipal and prejudgment interest were included in calculating eligibility for attorney's fees under NRS 18.010(3)(a),[3] we would be compelled to reverse the award to respondents. Upon reflection and reconsideration, we believe that the part of *Jones* requiring both principal and prejudgment interest to be calculated was incorrectly decided. We conclude that prejudgment interest is not "damages for delay in payment of a contractual obligation", *Jones,* and should not be included with the principal in calculating the eligibility of a plaintiff as a prevailing party for an award of attorney's fees within the provisions of NRS 18.010(3)(a).

Here, the judgment, without taking into account interest or costs, was in the amount of $9,500. The award of an attorney's fee to respondents in the amount of $2,500 is affirmed.

4. Included in the costs assessed was an expert witness fee in the amount of $250. Appellants claim it was error for the

---

[3]NRS 18.010(2)(a), 1977 Stats. ch. 401 § 4, former NRS 18.010(3)(a):

The court may make an allowance of attorney's fees to:
(a) The plaintiff as prevailing party when the plaintiff has not recovered more than $10,000;

trial court to allow the fee because no weight was given to the witness' testimony.[4]

Subject to statutory limitations, the taxing of costs rests largely in the sound discretion of the trial court which will be reversed only in the event of abuse. Euler v. Waller, 295 F.2d 765 (10th Cir. 1961); Beaulieu v. Elliott, 434 P.2d 665 (Alaska 1967); Frampton v. Wilson, 605 P.2d 771 (Utah 1980).

A trial judge is authorized by statute to award "[r]easonable fees of not more than three expert witnesses in an amount of not more than $250 for each witness," NRS 18.005(5), to a party in whose favor judgment is rendered, if the witness had been sworn and testified. *Cf.* Maxwell v. Amaral, 79 Nev. 323, 383 P.2d 365 (1963). Here the statutory requirements for the award of an expert witness fee have been met and no abuse of discretion appears.

To the extent that Jones v. Jones, 86 Nev. 879, 478 P.2d 148 (1970), is in conflict with this opinion, it is hereby overruled.

The judgment is affirmed.

GUNDERSON, C. J., and MANOUKIAN and MOWBRAY, JJ., and THOMPSON, D. J.[5] concur.

---

[4]Neither party proceeded properly to bring the questions of costs before the trial court. Nevertheless, that court allowed costs to respondents. Although respondents filed a memorandum of costs with the clerk of the court, the record does not reveal that appellants were ever served with that memorandum. NRS 18.110. On the other hand, appellants made no move to retax and settle costs pursuant to NRS 18.110, *cf.* Securities Investment v. Donnelley, 89 Nev. 341, 513 P.2d 1238 (1973), but instead raised the issue in their points and authorities in support of their motion for amendment of judgment.

[5]The Governor designated The Honorable J. Charles Thompson, Judge of the Eighth Judicial District Court, to sit in the place of THE HONORABLE GORDON THOMPSON, Justice. Nev. Const. art. 6, § 4.