131 Nev., Advance Opinion 64

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| ANIKA FRAZIER, INDIVIDUALLY; AND RANDY KEYS, INDIVIDUALLY, Appellants, vs. PATRICK DRAKE, INDIVIDUALLY; AND MS CONCRETE COMPANY, INC., Respondents. | No. 61775 |

**FILED**

SEP 03 2015



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court judgment on a jury verdict in a personal injury action. Eighth Judicial District Court, Clark County; Doug Smith, Judge.

*Affirmed in part, reversed in part, and remanded.*

Greenman Goldberg Raby & Martinez and Aubrey Goldberg, Las Vegas; Walsh & Friedman, Ltd., and Robert J. Walsh, Las Vegas, for Appellants.

Hall Jaffe & Clayton, LLP, and Steven T. Jaffe and Ashlie L. Surur, Las Vegas, for Respondents.

BEFORE GIBBONS, C.J., TAO and SILVER, JJ.

## OPINION

PER CURIAM:

This matter arises from a personal injury action initiated by appellants following a motor vehicle accident in which their vehicle was rear-ended by a semitrailer truck driven and owned by respondents. A jury trial of appellants' claims resulted in a verdict in respondents' favor,

and the district court later denied appellants' motion for a new trial. The district court further awarded respondents attorney fees and costs, the latter of which included an award of expert witness fees.

In this appeal, we are presented with two novel issues. First, we must determine whether a district court abuses its discretion in awarding attorney fees when parties fail to improve upon rejected offers of judgment at trial, but the district court concludes that all of the *Beattie v. Thomas*, 99 Nev. 579, 668 P.2d 268 (1983), factors other than the reasonableness of the requested fees favor the parties who rejected the offers of judgment. Second, we address the considerations that a district court must weigh in deciding whether to award expert witness fees as costs in excess of NRS 18.005(5)'s $1,500 per-expert presumed maximum and, if such an award is to be made, in determining what amount constitutes a reasonable award beyond this statutory ceiling.

Before reaching these issues, however, we must first evaluate whether the district court properly instructed the jury on sudden emergencies. The three sudden emergency instructions at issue here all stated that the jury could find that respondents were not negligent if they were suddenly placed in a position of peril through no fault of their own and acted as reasonably prudent people would upon being confronted with that emergency. We must also determine if a new trial was warranted because the jury disregarded instructions regarding the applicable standard of care. Because evidence was presented indicating that bees flew into the cabin of respondents' truck, and one bee landed on the eye of the driver, these facts could allow the jury to infer that a sudden emergency occurred and that respondents were not negligent. Thus, the district court did not abuse its discretion by giving the sudden emergency jury instructions. We further conclude that the jury's verdict does not

demonstrate that the jury disregarded the given instructions. We therefore affirm the judgment on the jury verdict and the denial of appellants' motion for a new trial.

Turning to the award of attorney fees, the reasonableness of the fees requested cannot, by itself, outweigh the other three *Beattie* factors. As a result, we conclude the court abused its discretion by awarding attorney fees to respondents based on the rejected offers of judgment, and we reverse that award. Finally, with regard to the expert witness fees award, we note that the Nevada Supreme Court has provided only limited guidance on this issue. Thus, we adopt factors to guide the district courts in assessing the reasonableness of such requests and whether the circumstances surrounding the expert's testimony require an award in excess of NRS 18.005(5)'s per-expert presumptive maximum. Here, the district court provided only limited justification for its decision to award expert witness fees in excess of $1,500 per expert and offered no explanation for how it arrived at the amount of expert witness fees awarded. We therefore reverse the award of expert witness fees as costs and remand this matter to the district court for further proceedings consistent with this opinion.

## BACKGROUND

Respondent Patrick Drake was an employee of respondent MS Concrete Company, Inc. On the day of the incident, Drake was driving an MS Concrete semitrailer truck on a major road in North Las Vegas. As he was driving, bees flew into the truck's cabin,[1] and one bee purportedly landed on his eye. While Drake attempted to remove the bee from his eye,

_____

[1]According to Drake, numerous bees flew into the cabin of the truck. After the accident, a responding police officer noted a few dead bees on the truck's front grill as well as one live bee inside the cabin.

he failed to observe a stoplight and rear-ended appellants Anika Frazier and Randy Keys, whose vehicle was stopped at the light. Frazier and Keys (collectively referred to as Frazier, except where the context requires otherwise) suffered injuries in the accident and subsequently initiated the underlying personal injury action against Drake and MS Concrete (collectively referred to as Drake).

Approximately one month before trial, and nearly three years after the complaint was filed, Drake made an offer of judgment to each appellant pursuant to NRCP 68 and NRS 17.115. Frazier and Keys each rejected the offers, which were for $50,001 and $70,001, respectively.

During the trial, Drake presented his defense that the bee landing on his eye constituted a sudden emergency rendering him unable to avoid the accident. Based on this defense, Drake sought to have the jury instructed that, if it found that the bee landing on his eye constituted a sudden emergency, he only had a duty of care equal to that of a reasonable person faced with the same situation. Over Frazier's objections, the court instructed the jury on sudden emergencies,[2] and the jury ultimately found in favor of Drake. Frazier then moved for a new trial, arguing that the sudden emergency instructions should not have been given and that the jury ignored the court's instruction regarding Drake's standard of care in reaching its verdict. Drake opposed this motion, which the district court ultimately denied.

In addition, Drake moved for attorney fees and costs, citing Frazier's and Keys' failure to improve upon the offers of judgment at trial and Drake's status as a prevailing party. Drake's motion sought both

_____

[2]Frazier does not challenge the substance of these instructions on appeal, and thus, they are not reproduced within this opinion.

general costs and $107,635.73 in fees for five expert witnesses. Frazier opposed the motion, arguing that awarding attorney fees was not proper under the *Beattie* factors and that the requested costs, particularly the expert witness fees, were excessive. Ultimately, the district court granted Drake's motion in part. Despite finding that three of the four *Beattie* factors weighed in favor of Frazier, the district court nonetheless awarded Drake all of his requested attorney fees. The court also awarded Drake his general costs but reduced the award for expert witness fees as costs to $47,400, as it found some of the fees to be unreasonable and excessive. In total, the court awarded Drake $144,808.59 in attorney fees, general costs, and expert witness fees. Following the entry of judgment on the jury verdict, this appeal followed.[3]

## ANALYSIS

Our examination of the issues presented in this appeal begins with Frazier's challenges to the judgment on the jury verdict and the denial of her new trial motion, which focus on the district court's decision to give the three sudden emergency jury instructions, and her argument that the jury disregarded the standard of care instructions. We then turn to Frazier's challenge to the award of attorney fees to Drake, based on Frazier's and Keys' rejections of the offers of judgment. Lastly, we conclude by addressing the award of expert witness fees to Drake.

District court decisions regarding whether to give a particular jury instruction, grant a new trial motion, and award attorney fees and

---

[3]The orders denying Frazier's new trial motion and awarding Drake attorney fees and costs were entered before the judgment on the jury verdict and are thus before us as interlocutory orders challenged in the context of Frazier's appeal from the district court judgment. *See Consol. Generator–Nev., Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1312, 971 P.2d 1251, 1256 (1998).

costs are reviewed for an abuse of discretion. *Wyeth v. Rowatt*, 126 Nev. 446, 464, 244 P.3d 765, 778 (2010) (jury instructions); *Ringle v. Bruton*, 120 Nev. 82, 94, 86 P.3d 1032, 1040 (2004) (new trial motions); *LaForge v. State, Univ. & Cmty. Coll. Sys. of Nev.*, 116 Nev. 415, 423, 997 P.2d 130, 136 (2000) (attorney fees); *Bobby Berosini, Ltd. v. PETA*, 114 Nev. 1348, 1352, 971 P.2d 383, 385 (1998) (costs). While the abuse of discretion standard is generally deferential, the reviewing court will not defer to a district court decision that is based on legal error. *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010).

*Sudden emergency instructions*

Frazier first challenges the district court's decision to give the jury three sudden emergency instructions. In particular, she contends the sudden emergency doctrine should not have been applied because Drake created or contributed to the emergency by failing to apply his brakes when the bees flew in his cab window. In response, Drake argues the sudden emergency instructions were proper because the bees flying in his window, and particularly one bee landing on his eye, created a sudden emergency that prevented him from avoiding the collision.

In an ordinary negligence action, a plaintiff must demonstrate, among other things, that the defendant breached a duty of care owed to the plaintiff. *DeBoer v. Senior Bridges of Sparks Family Hosp., Inc.*, 128 Nev. ___, ___, 282 P.3d 727, 732 (2012). Under a general negligence standard, a party who owed a duty of care must "exercise reasonable care to avoid foreseeable harm" to the party to whom that duty is owed. *Butler ex rel. Biller v. Bayer*, 123 Nev. 450, 464, 168 P.3d 1055, 1065 (2007). One defense to a negligence claim is the sudden emergency doctrine, which allows a defendant to argue he was not negligent insofar as he was confronted with a sudden emergency that did not arise due to

his own negligence and he acted as a reasonably prudent person would upon being confronted with that emergency. *See generally Posas v. Horton*, 126 Nev. 112, 228 P.3d 457 (2010).

In *Posas*, the Nevada Supreme Court discussed the circumstances under which the sudden emergency doctrine may be applied. *See id.* In addressing this issue, the *Posas* court recognized that "a sudden emergency occurs when an unexpected condition confronts a party exercising reasonable care." *Id.* at 115, 228 P.3d at 459 (citing 57A Am. Jur. 2d *Negligence* § 198 (2004)). Thus, when a party's negligence is what caused the emergency, that party's exercise of reasonable care after the emergency arose will not preclude his liability for the negligent conduct that created the emergency. *Id.* (citing Restatement (Second) of Torts § 296 (1965)).

For a sudden emergency instruction to be warranted, sufficient evidence must be presented demonstrating that a party was suddenly placed in a position of peril through no fault of his own and that he responded to that emergency as a reasonably prudent person would. *Id.* Additionally, the emergency must have directly affected the party seeking the instruction, rather than another party involved in the incident, even if the emergency resulted in indirect consequences for the party seeking the instruction. *See id.* at 118, 228 P.3d at 461 (concluding that a pedestrian walking into the street in front of a car was not a sudden emergency for the driver of a second car who was following too closely and hit the first car when it stopped short to avoid hitting the pedestrian). Finally, when a sudden emergency instruction is sought in the context of a motor vehicle accident case, evidence must be presented demonstrating that the asserted emergency involved something more than the typical hazards drivers should expect to encounter in the regular course of

operating a vehicle, such as the sudden appearance of obstacles or people, crowded intersections, or sudden stops. *Id.* at 117, 228 P.3d at 460.

In challenging both the judgment on the jury verdict and the denial of her new trial motion, Frazier asserts the sudden emergency doctrine did not apply in this case because Drake caused the emergency situation by failing to apply the brakes while removing the bee from his eye. Frazier's argument suggests the failure to brake and the resulting collision constituted the sudden emergency. The emergency asserted by Drake, and recognized by the district court in its jury instructions, however, was not Drake's failure to apply the brakes, but instead, was the entrance of the bees into the truck cabin and, particularly, the proximity of one of those bees to Drake's eye.

To that end, during trial, Drake presented evidence indicating that bees flew into the cabin of his truck shortly before the accident occurred and that one of the bees landed on his eye. He further presented expert testimony indicating that, when people are confronted with an emergency, their brain focuses all of its attention on dealing with the emergency until it is resolved, such that Drake's brain would respond to a bee landing on his eye as an emergency and would "lock[ ] into dealing just with that trauma." The expert concluded that, under these circumstances, Drake was unable to focus on stopping or avoiding a collision with Frazier's car until the bee was no longer in his eye.

Moreover, Frazier does not contend that Drake did anything to cause the appearance of the bees in the cabin or that he otherwise acted negligently prior to their entry into the cabin. And to the extent Frazier's arguments can be read as suggesting that bees flying into a vehicle, with one bee landing on the driver's eye, constitute the sort of typical driving hazard that would preclude application of the sudden emergency doctrine,

Court of Appeals
of
Nevada

(O) 1947B

8

relevant authority supports the conclusion that these circumstances would constitute more than an ordinary driving hazard. *See id.* at 115 n.5, 228 P.3d at 459 n.5 (noting that other courts have given sudden emergency instructions based on, among other things, dust clouds, dense patches of fog, an unexpected brake failure, and a stopped vehicle without hazard lights activated at night).

Based on the foregoing, we conclude Drake presented sufficient evidence to allow the jury to determine that, through no fault of his own, Drake was directly placed in a position of peril beyond the ordinary hazards of driving and responded to that situation as a reasonably prudent person would. *See id.* at 115, 228 P.3d at 459. Under these circumstances, we will not disturb the jury verdict based on the district court's decision to instruct the jury regarding the law on sudden emergencies.[4] *Id.*; *Wyeth*, 126 Nev. at 464, 244 P.3d at 778 (stating that a party is entitled to have the jury instructed on its theory of the case so long as that theory is supported by the evidence and that the district court's decision to give a particular jury instruction will not be overturned absent an abuse of discretion or judicial error). For the same reasons, we determine the district court did not abuse its discretion in refusing to grant a new trial on these grounds. *See Ringle*, 120 Nev. at 94, 86 P.3d at 1040 (reviewing a district court's resolution of a new trial motion for an abuse of discretion).

---

[4]Frazier also contends that giving three separate sudden emergency instructions was improper because doing so had the effect of directing the jury to find that a sudden emergency occurred. As Frazier provides no authority to support this position, however, we decline to consider it. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating that the court need not address issues not cogently argued or supported by relevant authority).

 

*Disregard of jury instructions*

Frazier next argues the district court abused its discretion by not granting a new trial based on the jury's alleged disregard of the court's instructions regarding the applicable standard of care. The Nevada Supreme Court has held that, when a party seeking a new trial argues that the jury manifestly disregarded its instructions under NRCP 59(a)(5),[5] the district court is obligated to grant the new trial motion "if the jury could not have reached the verdict that it reached if it had properly applied the district court's instructions." *Paul v. Imperial Palace, Inc.*, 111 Nev. 1544, 1550, 908 P.2d 226, 230 (1995); *see also Carlson v. Locatelli,* 109 Nev. 257, 261, 849 P.2d 313, 315 (1993) (concluding that "'[t]his basis for granting a new trial may only be used if the jury, as a matter of law, could not have reached the conclusion that it reached'" (quoting *Brascia v. Johnson*, 105 Nev. 592, 594, 781 P.2d 765, 767 (1989))).

Regarding Drake's duty of care, the jury was instructed that a driver has a duty to decrease his speed as necessary to avoid colliding with another vehicle and that, if the jury found Drake violated this duty, it "should then consider the issue of whether that was negligence and was a proximate and legal cause of injury or damage to the plaintiff." The sudden emergency instructions, however, allowed the jury to find Drake was not negligent if it concluded that he was confronted with a sudden emergency not caused by his own negligence and that he acted as any reasonably prudent person would when faced with a similar emergency.

---

[5]NRCP 59(a)(5) provides that the district court may grant a new trial if there was a "[m]anifest disregard by the jury of the instructions of the court" that materially affected a party's substantial rights.

Taking the sudden emergency instructions into account, Frazier contends a reasonably prudent person would have applied the brakes under the circumstances faced by Drake. In this regard, Frazier points to testimony by three witnesses asserting that they experienced having bees in their cars and that they either rolled down the window, allowing the bees to escape, or applied their brakes and pulled the car over until the bees flew out of the car. But as Drake points out, none of these witnesses testified that a bee had landed on their face or on their eye. Moreover, Drake presented expert testimony indicating that, when the bee landed on his eye, his brain would have focused all of its attention on dealing with the bee, such that he could not focus on stopping or avoiding a collision with Frazier's car until the bee was no longer in his eye.

Based on this evidence, the jury could have found that, when faced with the sudden emergency of a bee in his eye, Drake acted as a reasonably prudent person would act under the same circumstances. *See Posas*, 126 Nev. at 115, 228 P.3d at 459. Thus, it cannot be said that the jurors did not follow the district court's instructions when they found for Drake. *See id.*; *see also Krause Inc. v. Little*, 117 Nev. 929, 937, 34 P.3d 566, 571 (2001) (holding that jurors are presumed to follow the district court's instructions). Accordingly, because Frazier cannot demonstrate that, as a matter of law, the jury could not have reached a verdict in Drake's favor without manifestly disregarding its instructions, the district court properly denied Frazier's request for a new trial on this basis. *See Paul*, 111 Nev. at 1550, 908 P.2d at 230; *Carlson*, 109 Nev. at 261, 849 P.2d at 315. Having determined that the jury instructions and the denial of the motion for a new trial were proper, we now turn our attention to Frazier's arguments regarding the district court's awards of attorney fees and expert witness fees as costs to Drake.

*Attorney fees*

Under NRCP 68 and NRS 17.115,[6] either party may make an offer of judgment and serve it on another party to the case at least ten days before trial. If the party to whom the offer is made rejects it and then fails to obtain a more favorable judgment at trial, the district court may order that party to pay the offeror "reasonable attorney fees." NRCP 68(f)(2); NRS 17.115(4)(d)(3). Although the decision to award such fees lies within the district court's discretion, the Nevada Supreme Court has emphasized that, while Nevada's offer of judgment provisions are designed to encourage settlement, they should not be used as a mechanism to unfairly force plaintiffs to forego legitimate claims. *Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983).

To that end, in *Beattie*, the Nevada Supreme Court held that, when determining whether to award attorney fees based on a rejected offer of judgment, the district court is to evaluate

> (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

*Id.* Notably, the first three factors all relate to the parties' motives in making or rejecting the offer and continuing the litigation, whereas the fourth factor relates to the amount of fees requested. *See id.* None of

---

[6]NRS 17.115 has been repealed by the 78th Nevada Legislature effective October 1, 2015. A.B. 69, 78th Leg. (Nev. 2015). Because the statute was in effect at the time the award of attorney fees and costs was made, however, we nonetheless consider the parties' NRS 17.115-based arguments to the extent that they are properly before us.

these factors are outcome determinative, however, and thus, each should be given appropriate consideration. *Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 252 n.16, 955 P.2d 661, 673 n.16 (1998).

When a district court properly evaluates the *Beattie* factors, its decision to grant or deny attorney fees will not be disturbed absent a clear abuse of discretion. *LaForge v. State, Univ. & Cmty. Coll. Sys. of Nev.*, 116 Nev. 415, 423, 997 P.2d 130, 136 (2000). Such an abuse occurs when the court's evaluation of the *Beattie* factors is arbitrary or capricious. *Yamaha Motor Co.*, 114 Nev. at 251, 955 P.2d at 672.

In challenging the award of attorney fees to Drake, Frazier does not challenge the district court's findings with regard to the individual *Beattie* factors. Her lack of argument in this regard is not surprising, as the district court found that the first three factors weighed in her favor, while only concluding that the factor regarding the reasonableness of the amount of fees weighed in favor of Drake. Under these circumstances, Frazier essentially argues that, when the district court's individual findings regarding these factors are combined, they do not support the decision to award the requested fees. Drake, on the other hand, argues the district court properly considered each of the *Beattie* factors and maintains that the fact that the district court determined that certain of those factors weighed in Frazier's "favor is irrelevant and does not establish [an] abuse of discretion."[7]

Because offers of judgment are designed to encourage settlement and are not intended to unfairly force plaintiffs to forego legitimate claims, three of the four *Beattie* factors require an assessment

---

[7]Like Frazier, Drake does not argue that the district court's determinations regarding any of the individual *Beattie* factors were incorrect.

of whether the parties' actions were undertaken in good faith. Specifically, the district court must determine whether the plaintiff's claims were brought in good faith,[8] whether the defendant's offer was reasonable and in good faith in both timing and amount, and whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith. *Id.* The connection between the emphases that these three factors place on the parties' good-faith participation in this process and the underlying purposes of NRCP 68 and NRS 17.115 is clear. As the Nevada Supreme Court recognized, "[i]f the good faith of either party in litigating liability and/or damage issues is not taken into account, offers would have the effect of unfairly forcing litigants to forego legitimate claims." *Yamaha Motor Co.*, 114 Nev. at 252, 955 P.2d at 673. In contrast, the fourth *Beattie* factor—the reasonableness of the amount of fees requested—does not have any direct connection with the questions of whether a good-faith attempt at settlement has been made or whether the offer is an attempt to force a plaintiff to forego legitimate claims.

As Frazier points out, the district court found that Frazier's and Keys' claims were brought in good faith, that Drake's offers of judgment were not reasonable or made in good faith in either timing or amount, and that Frazier's and Keys' decisions to reject Drake's offers were not grossly unreasonable or in bad faith. Despite finding that each of the three good-faith-participation factors favored Frazier and Keys, and that only the reasonableness of the amount of attorney fees requested

---

[8]After the *Beattie* factors were adopted, the Nevada Supreme Court held that, where the defendant is the offeree, the factor regarding whether the plaintiff's claims were brought in good faith drops out and is replaced by an examination of whether the defendant's defenses were litigated in good faith. *Yamaha Motor Co.*, 114 Nev. at 252, 955 P.2d at 673.

favored Drake, the district court nonetheless awarded Drake the entirety of his requested attorney fees. In reaching this conclusion, the district court penalized Frazier and Keys for rejecting offers of judgment the court deemed unreasonable and not made in good faith and opting to pursue claims the court found to have been brought in good faith, while simultaneously determining that Frazier's and Keys' decisions to reject Drake's offers were neither unreasonable nor made in bad faith.

The district court's award of attorney fees to Drake under these circumstances effectively deemed the respective good faith of the parties to be of no import. Such an approach elevates the reasonableness of the attorney fees sought to a position of higher importance than the other *Beattie* factors in direct contravention of well-established Nevada authority. *See Yamaha Motor Co.*, 114 Nev. at 252 n.16, 955 P.2d at 673 n.16 (cautioning the district courts that no one *Beattie* factor is outcome determinative). Further, this approach transforms offers of judgment into a vehicle to pressure offerees into foregoing legitimate claims in exchange for unreasonably low offers of judgment, which is the exact result that the Nevada Supreme Court sought to avoid by requiring that the parties' good faith be considered when awarding attorney fees under Nevada's offer of judgment provisions. *Id.* at 252, 955 P.2d at 673 (emphasizing that the parties' good faith must be taken into account, lest offers "have the effect of unfairly forcing litigants to forego legitimate claims").

We conclude that where, as here, the district court determines that the three good-faith *Beattie* factors weigh in favor of the party that rejected the offer of judgment, the reasonableness of the fees requested by the offeror becomes irrelevant, and cannot, by itself, support a decision to award attorney fees to the offeror. Thus, because the district court found that the fees' reasonableness alone supported an award of attorney fees,

we conclude that the district court's weighing of the *Beattie* factors was arbitrary and capricious, *id.* at 251, 955 P.2d at 672, and constituted legal error, rendering its decision to award attorney fees to Drake a clear abuse of discretion. *See LaForge*, 116 Nev. at 423, 997 P.2d at 136; *see also AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010) ("While review for abuse of discretion is ordinarily deferential, deference is not owed to legal error."). Accordingly, we reverse the district court's award of attorney fees.

*Expert witness fees*

Turning to the district court's award of expert witness fees as costs to Drake pursuant to NRS 18.020(3) and NRS 18.005(5), the parties do not dispute that Drake is a prevailing party entitled to recover costs under NRS 18.020(3). Instead, the parties' arguments focus on whether the amount of expert witness fees awarded was excessive.[9] In this regard, NRS 18.005(5) provides for the recovery of "[r]easonable fees of not more than five expert witnesses in an amount of not more than $1,500 for each witness, unless the court allows a larger fee after determining that the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee." A district court's decision to award more than $1,500 in expert witness fees is reviewed for an abuse of discretion. *See Gilman v. State Bd. of Veterinary Med. Exam'rs*, 120 Nev. 263, 272-73, 89 P.3d 1000, 1006-07 (2004), *disapproved of on other grounds by Nassiri v.*

---

[9]While Frazier also addresses the district court's award of $50,741.09 in general costs to Drake, her arguments provide no explanation as to why she believes this award was unreasonable. We therefore decline to consider these arguments and necessarily affirm this award. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (holding that an appellate court need not consider issues that are not cogently argued).

COURT OF APPEALS
OF
NEVADA

(O) 1947B

*Chiropractic Physicians' Bd.*, 130 Nev. ___, ___, 327 P.3d 487, 490-91 (2014).

Drake sought fees for five expert witnesses in amounts of $32,657.52, $10,804.00, $20,325.00, $36,449.21, and $7,400.00 respectively. Although the district court awarded fees for each expert, it reduced the award to $10,000 per expert for the first four experts while awarding the full $7,400 for the fifth expert. In making this determination, the court found that, while Drake had hired the top experts in the country, the amounts sought were nonetheless excessive and unreasonable. The district court did not, however, explain why the fees requested for the first four experts were excessive or unreasonable or how it arrived at the flat $10,000 awards for each expert. The court similarly did not explain why it found the $7,400 fee to be reasonable. Further, despite concluding that $1,500 was not a reasonable sum to cover the cost of retaining an expert, the court did not address NRS 18.005(5)'s requirement that fees over $1,500 per expert should only be awarded if the court determines that the circumstances surrounding the expert's testimony were of such necessity as to require the larger fees.

On appeal, Frazier argues the award of expert witness fees was excessive because the awards for each expert greatly exceeded $1,500. Drake disagrees,[10] arguing the district court properly assessed the

[10]Frazier and Drake both reference the factors set forth in *Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983), to support their respective arguments as to the propriety of the expert witness fees award. The *Beattie* factors, however, "merely guide[ ] the district court's discretion to award attorney fees" following a rejected offer of judgment, *see Albios v. Horizon Cmtys., Inc.*, 122 Nev. 409, 420 n.17, 132 P.3d 1022, 1030 n.17 (2006), and are thus not relevant to an award of expert witness fees under NRS 18.005(5).

reasonableness of the requested fees before making its award.[11] In this regard, Drake points to the court's determination that he hired the top experts in the country and that $1,500 is "not a reasonable amount to hire a competent expert."

For an award of expert witness fees in excess of $1,500 per expert to be proper, the fees awarded must not only be reasonable, but "the circumstances surrounding [each] expert's testimony [must be] of such necessity as to require the larger fee." NRS 18.005(5); *see also Logan v. Abe*, 131 Nev. ___, ___, 350 P.3d 1139, 1144 (2015) (stating that "NRS 18.005(5) allows the district court to award more than $1,500 for an expert's witness fees if the larger fee was necessary"). In line with these requirements, in *Gilman*, the Nevada Supreme Court affirmed an award of $7,145 in expert witness fees on the basis that the expert's testimony constituted most of the party's evidence in the underlying case. 120 Nev.

---

[11]In awarding expert witness fees, the district court referenced the reasonableness requirements in both NRS 18.005(5) and NRS 17.115(4)(d)(1) (providing for an award of "[a] reasonable sum to cover any costs incurred" for certain expert witnesses to a party whose offer of judgment was rejected). But in responding to Frazier's assertion that the expert witness fees award was not reasonable, Drake's answering brief addresses only NRS 18.005(5), even though Drake made extensive arguments regarding why such fees should be awarded under both NRS 17.115(4)(d)(1) and NRCP 68 in the district court. Drake's answering brief does, however, discuss the offer of judgment provisions in NRS 17.115 and NRCP 68 in arguing that the awards of attorney fees and general costs should be affirmed. At oral argument, Drake sought to resurrect his NRS 17.115- and NRCP 68-based arguments in support of the expert witness fees award, contending that, under these provisions, the district court could have awarded dollar-for-dollar costs for any amounts incurred after the offers were made. But given his failure to incorporate these arguments into his answering brief despite making extensive arguments based on these provisions in the district court, we decline to consider Drake's NRS 17.115- and NRCP 68-based arguments in resolving Frazier's challenge to the expert witness fees award.

at 272-73, 89 P.3d at 1006-07. Aside from *Gilman*, however, the Nevada Supreme Court has not provided further guidance as to when an award of expert witness fees of more than $1,500 per expert under NRS 18.005(5) is warranted.[12] As a result, we look to other jurisdictions for additional guidance regarding what should be considered in determining whether expert witness fees requested in excess of $1,500 per expert are reasonable and whether the circumstances surrounding the expert's testimony are of such necessity as to require a larger fee.

_____

[12]The Nevada Supreme Court recently addressed the award of expert witness fees in excess of $1,500 per expert as costs in *Logan v. Abe*, 131 Nev. ___, 350 P.3d 1139 (2015). In that case, the expert witness had been retained to rebut the testimony of the opposing party's expert witness, but the opposing party decided on the eve of trial not to call their expert. *Id.* at ___, 350 P.3d at 1144. Under those circumstances, the Nevada Supreme Court concluded the district court did not abuse its discretion by awarding expert witness fees greater than $1,500 as costs. *Id.* In setting up the discussion, the *Logan* court contrasted the case before it with a situation in which a party seeks to recover less than $1,500, which the *Logan* court noted "does not require an expert witness to testify." *Id.* In light of this contrasting language, and the *Logan* court's emphasis on the particular circumstances of that case leading to the expert not testifying, *Logan* suggests that, ordinarily, an expert must testify in order for a party to recover more than $1,500 in costs for that expert's fees under NRS 18.005(5). This conclusion is consistent with an earlier Nevada Supreme Court case, *Mays v. Todaro*, 97 Nev. 195, 199, 626 P.2d 260, 263 (1981), in which the court noted that expert witness fees could be awarded "if the witness had been sworn and testified." *Id.* The *Mays* court, however, did not limit this language only to situations in which the fees sought exceeded $1,500. *See id.* Conversely, in *Bergmann v. Boyce*, 109 Nev. 670, 679-80, 856 P.2d 560, 566 (1993), the court affirmed an award of expert fees below the statutory cap, holding that an expert need not be called as a witness as a predicate for awarding fees without overtly limiting the court's conclusion to fees that do not exceed the statutory cap or discussing *Mays*. *Id.* Because Frazier does not assert that any of the fees at issue here should be excluded due to the expert not being called to testify at trial, however, we need not resolve the apparent inconsistency between these decisions.

*Extrajurisdictional authority*

Our survey of extrajurisdictional authority addressing the recovery of expert witness fees reveals that only Idaho has a statute or court rule similar to NRS 18.005(5).[13] Specifically, Idaho Rule of Civil Procedure 54(d)(1)(C)(8) provides for the recovery of "[r]easonable expert witness fees for an expert who testifies at a deposition or at a trial of an action not to exceed the sum of $2,000 for each expert witness for all appearances." This cap may be exceeded, however, if it can be demonstrated "that [the] costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party." Idaho R. Civ. P. 54(d)(1)(D). Applying this rule to an award of approximately $24,000 in expert witness fees arising from an eminent domain action, the Idaho Supreme Court upheld the award, concluding the expert aided the court in understanding the incomprehensible issues presented, the testimony was helpful due to the exceptional nature of the case, and the expert's testimony was necessary

---

[13]Indeed, many jurisdictions do not allow the recovery of any expert witness fees as costs, *see, e.g.*, *Wood v. Tyler*, 877 S.W.2d 582, 583 (Ark. 1994); *TruServ Corp. v. Ernst & Young LLP*, 876 N.E.2d 77, 85 (Ill. App. Ct. 2007), while other jurisdictions limit the recoverable fees to the nominal amount generally provided for witnesses, *see, e.g.*, *Calhoun v. Hammond*, 345 N.E.2d 859, 862 (Ind. Ct. App. 1976); *Grant v. Chappell*, 916 P.2d 723, 725 (Kan. Ct. App. 1996), or limit the award to encompass only fees covering time the expert actually spent testifying or in attendance at trial, thereby precluding any award for preparation time. *See, e.g.*, *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 238 (Del. Ch. 1997) (but also recognizing that extraordinary circumstances may allow for an additional award of costs, without explaining what those circumstances might be); *Springs v. City of Charlotte*, 704 S.E.2d 319, 327 (N.C. Ct. App. 2011); *Chaffin v. Ellis*, 211 S.W.3d 264, 293 (Tenn. Ct. App. 2006).

due to the complexity of the issues presented. *See State, Dep't of Transp. v. HJ Grathol*, 343 P.3d 480, 494-95 (Idaho 2015).

Despite not having statutes or court rules directly analogous to NRS 18.005(5), other jurisdictions nonetheless permit such fees in certain circumstances. To the extent that such fees are permitted, those jurisdictions generally require trial courts to consider factors related to the reasonableness and necessity of an expert's testimony in determining whether to make an award of expert witness fees. For example, Louisiana appellate courts have adopted two separate sets of somewhat related factors for use in determining whether expert witness fees should be awarded as part of a general costs award,[14] with both courts noting that such awards turn on the particular facts and circumstances of each case. *See Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll. v. 1732 Canal St., LLC*, 133 So. 3d 109, 118 n.6, 119-20 (La. Ct. App. 2014) (addressing an award of costs under Louisiana Code of Civil Procedure art. 1920, which provides that "the court may render judgment for costs . . . as it may consider equitable"); *Randolph v. Gen. Motors Corp.*, 646 So. 2d 1019, 1029 (La. Ct. App. 1994) (reviewing an award of expert witness fees as costs but failing to specify under what rule the award was made).

In *Board of Supervisors*, the Louisiana Court of Appeals held that, in deciding whether to award expert witness fees as costs, courts should consider the amount of time the expert spent in court, preparing a report, and preparing for trial; the amount charged to the hiring party; the

---

[14]Because Louisiana has multiple intermediate appellate courts, within the state, appellate court holdings are precedential only in the district in which the court sits. *See Bernard v. Ellis*, 111 So. 3d 995, 1000 (La. 2012) (addressing an issue because of a split among the appellate courts).

expert's expertise and the difficulty of the expert's work; the amount of the award; and "[t]he degree to which the expert['s] . . . opinion aided the court in its decision." 133 So. 3d at 120. The court further provided that this list of factors was nonexhaustive and that each case would require a case-specific examination of appropriate factors. *Id.* Applying some of these factors to the approximately $250,000 award before it on appeal, the *Board of Supervisors* court affirmed the award in light of the complexity of the case, the length and scope of the testimony given, the nature and helpfulness of the testimony, and the deductions already made from the requested fees by the district court. *See generally id.* at 120-28.

In *Randolph*, another Louisiana Court of Appeals considered a slightly different set of factors covering essentially the same general considerations identified in *Board of Supervisors*. 646 So. 2d at 1029. The *Randolph* court indicated that trial courts should consider the time spent testifying, preparing for trial, and waiting to testify; the extent and nature of the work performed; the knowledge, attainments, and skill of the expert; the helpfulness of the expert's testimony; the amount in controversy; the complexity of the issues addressed by the expert; and awards to other experts in similar cases. *Id.* The court then went on to affirm an award of approximately $3,000 in expert witness fees for three experts, albeit by simply concluding that, "[c]onsidering these factors in light of the discretion accorded the trial court," it could not be said that the trial court abused its discretion in making the award. *Id.* at 1029-30.

Connecticut courts have considered a similar set of factors when evaluating the reasonableness of expert witness fees sought for time the expert spent responding to discovery from an opposing party under a former court rule that required parties seeking discovery to "pay the expert a reasonable fee" for this time. *See Rose v. Jolly*, 854 A.2d 824, 825

COURT OF APPEALS
OF
NEVADA

(O) 1947B

(Conn. Super. Ct. 2004) (providing that courts should evaluate the expert's area of expertise, education, and training; the prevailing rates earned by "comparably respected available experts"; "the nature, quality, and complexity" of the discovery responses provided; the fee incurred to retain the expert; the "fees traditionally charged by the expert on related matters"; and any additional factors that would assist the court "in balancing the interest implicated" by the rule in determining the amount of expert witness fees to award (quoting former Connecticut Superior Court Rule § 13-4(3))). These same factors are also utilized by Maryland courts and several federal district courts in evaluating requests for expert witness fees under similar rules providing for the recovery of expert fees incurred in responding to the opposing party's discovery. *See, e.g., Kilsheimer v. Dewberry & Davis*, 665 A.2d 723, 736 (Md. Ct. Spec. App. 1995); *Fisher-Price, Inc. v. Safety 1st, Inc.*, 217 F.R.D. 329, 333 (D. Del. 2003); *Goldwater v. Postmaster Gen.*, 136 F.R.D. 337, 339-40 (D. Conn. 1991).

The Massachusetts Supreme Judicial Court has likewise adopted similar factors for consideration in awarding reasonable expert witness fees pursuant to a consumer protections statute providing for an award of "'costs incurred in connection with said action.'" *Linthicum v. Archambault*, 398 N.E.2d 482, 488 (Mass. 1979) (quoting Mass. Gen. Laws ch. 93A, § 9(4)) (giving trial courts discretion to award reasonable costs under a statute providing that "the petitioner shall . . . be awarded reasonable . . . costs incurred"), *abrogated on other grounds by Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 640 N.E.2d 1101, 1105 n.7 (Mass. 1994). Specifically, the *Linthicum* court held that, in evaluating a request for expert witness fees, courts should consider "factors such as the time spent by the expert in testimony, the number of appearances, preparation

time, the degree of learning and skill possessed by that witness, as well as the assistance such testimony gave to the trier of fact." *Id.* Finally, the South Dakota Supreme Court has held that an examination of the reasonableness of an expert witness fees award turns on whether the fees are in excess of the customary rate for the services of a similar expert where the trial was held. *See State v. Guthrie,* 631 N.W.2d 190, 195-96 (S.D. 2001) (making this determination in reviewing an order requiring payment of an expert witness fee as a discovery sanction under a statute authorizing the imposition of any discovery sanctions that a court deems warranted).

As our examination of these cases illustrates, in those jurisdictions that do not bar or strictly limit the recovery of expert witness fees, the factors utilized to determine the amount of fees that should be awarded are largely similar. With these extrajurisdictional authorities in mind, we now determine what factors Nevada courts should consider in assessing the reasonableness of expert witness fees requested as costs in excess of $1,500 per expert and whether "the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee" under NRS 18.005(5).

*Factors for consideration in awarding expert witness fees as costs in excess of $1,500 per expert under NRS 18.005(5)*

While the Nevada Supreme Court has provided only limited guidance regarding what district courts must consider in awarding expert fees in excess of $1,500 per expert, the court has made clear that the importance of the expert's testimony to the party's case plays a key role in assessing the propriety of such an award. *See Gilman v. State Bd. of Veterinary Med. Exam'rs,* 120 Nev. 263, 273, 89 P.3d 1000, 1006-07 (2004), (affirming an award of $7,145 in fees made under NRS 18.005(5) because the expert's testimony constituted most of the party's evidence),

*disapproved of on other grounds by Nassiri v. Chiropractic Physicians' Bd.*, 130 Nev. ___, ___, 327 P.3d 487, 490-91 (2014). In addition, to be recoverable, any requested costs must have been actually incurred. *Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. ___, ___, 345 P.3d 1049, 1054 (2015). Similar to these requirements, many of the extrajurisdictional authorities discussed above also require that trial courts consider the impact the expert's testimony had on the case and the amount of fees actually incurred in determining the amounts that should be awarded. *E.g., Bd. of Supervisors*, 133 So. 3d at 120; *Randolph*, 646 So. 2d at 1029; *Kilsheimer*, 665 A.2d at 736; *Linthicum*, 398 N.E.2d at 488.

In light of these pronouncements from our supreme court and our review of extrajurisdictional authority, we conclude that any award of expert witness fees in excess of $1,500 per expert under NRS 18.005(5) must be supported by an express, careful, and preferably written explanation of the court's analysis of factors pertinent to determining the reasonableness of the requested fees and whether "the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee." *See* NRS 18.005(5); *cf. Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 93, 787 P.2d 777, 780 (1990) (requiring an "express, careful and preferably written explanation" of the district court's analysis of factors pertinent to determining whether a dismissal with prejudice is an appropriate discovery sanction). In evaluating requests for such awards, district courts should consider the importance of the expert's testimony to the party's case; the degree to which the expert's opinion aided the trier of fact in deciding the case; whether the expert's reports or testimony were repetitive of other expert witnesses; the extent and nature of the work performed by the expert; whether the expert had to conduct independent

investigations or testing; the amount of time the expert spent in court,[15] preparing a report, and preparing for trial; the expert's area of expertise; the expert's education and training; the fee actually charged to the party who retained the expert; the fees traditionally charged by the expert on related matters; comparable experts' fees charged in similar cases; and, if an expert is retained from outside the area where the trial is held, the fees and costs that would have been incurred to hire a comparable expert where the trial was held.[16]

We emphasize that not all of these factors may be pertinent to every request for expert witness fees in excess of $1,500 per expert under NRS 18.050(5), and thus, the resolution of such requests will necessarily require a case-by-case examination of appropriate factors. *See Bd. of Supervisors*, 133 So. 3d at 120. Moreover, the factors set forth in this opinion are nonexhaustive and other factors may therefore be appropriate for consideration depending on the circumstances of a case. *See id.*; *see also Rose*, 854 A.2d at 825. Finally, before any award of expert witness fees as costs may be made under NRS Chapter 18, the district court must have evidence before it demonstrating "that the costs were reasonable, necessary, and actually incurred" that goes beyond a mere memorandum of costs. *See Cadle Co.*, 131 Nev. at ___, 345 P.3d at 1054; *see also Bobby Berosini, Ltd. v. PETA*, 114 Nev. 1348, 1352, 971 P.2d 383, 385-86 (1998) (stating that costs awarded under NRS 18.005 must be reasonable, and

---

[15]This may include, for example, consideration of whether it was necessary for the expert to be in court to listen to other witnesses' testimony for the purpose of offering rebuttal testimony.

[16]The relevance of comparing the costs and fees incurred by hiring an expert from outside the area in which the trial is held to those that would be incurred to retain a comparable local expert will necessarily turn on the availability of comparable experts where the trial is held.

that "reasonable costs must be actual and reasonable," rather than an estimate, even if the estimate itself is reasonable (internal quotation marks omitted)).

*The district court's award of expert witness fees as costs*

In making the award of expert witness fees at issue here, the district court failed to explain why it found the fees for four of Drake's experts to be unreasonable or how it determined that $10,000 constituted a reasonable fee for each of these experts. Indeed, Drake conceded at oral argument that the amounts awarded for the experts appeared to simply be "guesstimates." The district court similarly provided no explanation for why it deemed the $7,400 fee requested for the fifth expert reasonable. And while the court did note that Drake had hired the top experts in the country and that $1,500 was not a reasonable sum to cover the cost of an expert, it did not address NRS 18.005(5)'s requirement that fees over $1,500 per expert should be awarded only if the court determines that the circumstances surrounding the experts' testimony were of such necessity as to require the larger fees.

Given the district court's failure to adequately set forth the basis for its decision or address why the circumstances surrounding the expert's testimony necessitated the larger fee, we conclude the district court abused its discretion in awarding Drake his expert witness fees. Thus, we reverse that award and remand this matter to the district court for reconsideration of Drake's request for expert witness fees as costs under NRS 18.005(5) in light of the principles set forth in this opinion.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment on the jury verdict and the denial of the new trial motion in the underlying case. We further conclude the district court's decision to award attorney fees based on Frazier's rejection of the offers of judgment was an abuse of

discretion, and we therefore reverse that award. Finally, we reverse the award of expert witness fees as costs and remand this issue to the district court for further proceedings consistent with this opinion.

_____, C.J.
Gibbons

_____, J.
Tao

_____, J.
Silver

COURT OF APPEALS
OF
NEVAOA

(O) 1947B